## BENEKS v. STATE OF INDIANA
[No. 26,384. Filed May 24, 1935.]

320

*Walter Parent, Robert Baker,* and *John G. Ywagley,* for appellant.

*Philip Lutz, Jr.,* Attorney-General, and *James D. Sturgis,* Deputy Attorney-General, for the State.

FANSLER, C. J.—Appellant was charged with and convicted of having procured one Nick Pasko to set fire to restaurant fixtures, equipment, and supplies, the property of appellant, for the purpose of defrauding an insurance company which had a policy upon the property.

The overruling of appellant's motion to quash the indictment is assigned as error. It is contended that the indictment does not charge that there was a ▪ fire insurance policy in full force and effect. That part of the indictment involved reads as follows: "For which said restaurant fixtures, equipment and supplies a policy of insurance for one thousand ($1,000.00) dollars had been issued to one Peter Beneks by the Homestead Fire Insurance Company, a foreign corporation, of the City of New York, State of New York, with intent to defraud said insurance company." It is contended that the allegation that the property had been insured was not a sufficient allegation that it was insured at the time of the fire. The allegation that the building was burned with intent to defraud the insurance company compels the inference that the policy was in force, and that it was so intended to be alleged. Our Criminal Code requires no greater certainty in criminal pleadings than is required in civil ones. The statute provides that the allegations as against a motion to quash must be certain only to a common intent, and the pleading will be deemed to allege all that can be implied from direct allegations therein by a reasonable and fair intendment. The question is almost identical with that presented in *Hart* v. *State* (1914), 181 Ind. 23, 103 N. E. 846, in which a similar indictment was held sufficient, and, upon authority of that case, we hold that the indictment here is sufficient as against a motion to quash.

Nick Pasko was called as a witness by the state. He testified that he had entered a plea of guilty to a charge of burning the building; that he had been badly ▪ burned in the fire, but that he did not know anything that occurred at the fire or for some time thereafter; that he was drunk at the time of the

fire; and that, because of his injuries and the annoyance of people trying to get statements, and "teasing" him, he was crazy for several weeks after the fire; that he entered a plea of guilty because a police officer had told him to; and that no one could get him out of it, but that he knew nothing of what occurred at the fire. He could not read or write. He was also asked about certain matters preceding the fire. He testified that he was not in Gary on the night of January 26th with the defendant; that he did not see him that night; that he was not in defendant's automobile; that he did not drive to the restaurant; that he was not with the defendant when he bought gasoline in a can at Gary; that defendant had not told him that he bought insurance and wanted the witness to burn the restaurant so he could have the money to open another place; that defendant did not tell him to sprinkle gasoline, and fire the building, and not to be scared. He was asked if he had· not made his mark upon a certain statement, and had not answered certain questions in the hospital a few days after the fire, and he answered that he knew nothing about it. The state was then permitted to prove by several witnesses that certain questions had been asked him, and that he had made certain answers; and a statement purporting to have been signed by him, by his mark, was permitted to be introduced in evidence; all indicating that he had said that appellant had procured him to burn the restaurant, and that he had accordingly burned it. In admitting the evidence, the trial court said that it was clearly incompetent upon the merits as against the defendant, but that it was admitted for the purpose of impeaching the witness. Section 562, Burns 1926, §2-1726, Burns 1933, §313, Baldwin's 1934 provides: "The party producing a witness shall not be allowed to impeach his credit by evi-

dence of bad character, unless it was indispensable that the party should produce him, or in case of manifest surprise, when the party shall have this right; but he may, in all cases, contradict him by other evidence, and by showing that he has made statements different from his present testimony." His written statement contradicted his testimony last detailed. It is true that it contained some matter, concerning which he did not give testimony at the trial, in relation to his being taken to various hospitals by the defendant, but the defendant testified to the same facts substantially, and he could not have been harmed by this. The evidence was clearly competent, for the purpose of contradicting the witness, under the last clause of the statute quoted. The only requirement is that the witness shall have testified to facts prejudicial to the party producing him upon some material issue. His testimony last detailed was material to the issue and prejudicial to the state. The statement was properly admitted. Appellant complains because the questions and answers contained in the statement were repeated before numerous witnesses, in the presence of the jury, and they were permitted to testify that the questions were asked and the answers made by the witnesses. We cannot say that this was prejudicial error, although it was not proper practice. It would have been better practice to permit the state to prove, by numerous witnesses, that appellant had made statements, which were reduced to writing and which he signed, all for the purpose of authenticating the signed statement and as a basis for its admission in evidence.

The chief of the fire department testified as a witness. He said that when he reached the building it was all afire; that "it was easy to see that it was not a natural fire." One wall had blown

out into the alley, and the back door was blown off. The whole interior was burned. There was no portion that was not on fire. It was a solid mass of fire. The front door was open, with the glass out of it. He said that he saw the defendant at the fire and told him that somebody had set his place on fire. He was then permitted, over the defendant's objection, to testify that, in his opinion as an expert, the fire was of incendiary origin. It was probably harmless, since he had testified to as much before in detailing his conversation with the defendant at the fire. But, since the case may be tried again, we must give consideration to the merits of the question.

The rule governing expert testimony is clearly stated by the Court of Appeals of New York, in *Dougherty* v. *Milliken* (1900), 57 N. E. 757, 759, as follows: "To the one class belong those cases in which the conclusions to be drawn by the jury depend upon the existence of facts which are not common knowledge, and which are peculiarly within the knowledge of men whose experience or study enables them to speak with authority upon the subject. If, in such cases, the jury, with all the facts before them, can form a conclusion thereon, it is their sole province to do so. In the other class we find those cases in which the conclusions to be drawn from the facts stated, as well as knowledge of the facts themselves, depend upon professional or scientific knowledge or skill not within the range of ordinary training or intelligence. In such cases not only the facts, but the conclusions to which they lead, may be testified to by qualified experts. The distinction between these two kinds of testimony is apparent. In the one instance the facts are to be stated by the experts, and the conclusion is to be drawn by the jury; in the other, the expert states the facts, and gives his

conclusion in the form of an opinion, which may be accepted or rejected by the jury."

The testimony of medical experts furnishes a good example of the class in which not only the facts, but the conclusions to which they lead, may be testified to by the expert, for the reason that in that field knowledge of the primary facts is not sufficient to enable the jury to draw conclusions. It would seem, however, that in the case of the origin of a fire, if the expert is permitted to testify to the primary facts, the conclusions can be drawn by the jury, and hence the expert should not be permitted to give his opinion upon the ultimate fact. This view is sustained by all of the authorities which have come to our attention. *People* v. *Grutz* (1914), 212 N. Y. 72, 105 N. E. 843, L. R. A. 1915 D, 229; *Deppe* v. *Atlantic Coast Line R. Co.* (1911), 70 S. E. (N. C.) 622; *Snow Lumber Co.* v. *Atlantic Coast Line R. Co.* (1909), 65 S. E. (N. C.) 920.

The normal function of a witness is to state facts, and not his conclusions or opinions. It has been said that "the cases in which opinions of witnesses are allowable constitute exceptions to the general rule, and the exceptions are not to be extended or enlarged so as to include new cases, except as a necessity to prevent a failure of justice—as when better evidence cannot be had." *Firemen's Ins. Co.* v. *J. H. Mohlman Co.* (1898), 91 Fed. 85, 88, 33 C. C. A. 347. Cases may arise in which it may be proper to admit opinion evidence as to the cause of a fire, but the facts in this case do not justify it.

Appellant contends that the evidence fails to show any intent upon his part to defraud the insurance company, for the reason that it does not appear that he collected anything on the policy, or made any demand for payment. But these facts are not

necessarily controlling. If appellant procured his property to be burned, it is for the jury to determine, from the facts and circumstances surrounding the transaction, what his purpose was. Otherwise one who is guilty of arson might, upon discovery, avoid punishment by making no claim for, or accepting no payment of, insurance.

Appellant tendered, and the court refused to give, an instruction containing the following language: "You have no right, however, to indulge in guess, speculation, or presumption. Your verdict should be based upon the evidence in the case as it is presented to you." The language used is misleading. A verdict of guilty must be based upon the evidence in the case and such reasonable inferences as are supported by the evidence. There need not, however, be direct evidence of the ultimate facts required to be proven. Circumstantial evidence which reasonably supports an inference of the ultimate facts will suffice. The defendant may be presumed to have intended the reasonable consequence of his acts. It is true, of course, that a verdict should not be reached by mere guess, but the juror must indulge in the presumption of innocence, and, in considering the evidence, weigh it in the light of his knowledge of affairs and his own experience, and draw only such inferences therefrom as in his judgment, and the light of all of his knowledge, are justified. A correct statement of the principles sought to be announced is found in instructions which were given.

Instruction No. 6 is as follows: "The term 'reasonable doubt' means simply this: If, after an impartial comparison and consideration of all the evidence, you can candidly say that you are not satisfied of the defendant's guilt, you have a reasonable

doubt. But, if after such impartial comparison and consideration of all the evidence, you can truthfully say that you have an abiding conviction of the defendant's guilt to a moral certainty, such as you would be willing to act upon in the more weighty and important matters relating to your own affairs, then you have no reasonable doubt. If you can reconcile the evidence before you upon any reasonable hypothesis consistent with the defendant's innocence you should do so. The term 'reasonable doubt,' however, does not mean a doubt which arises from some mere whim or from any careless surmise or guess, and while the law requires you to be satisfied from the evidence of the guilt of the defendant beyond a reasonable doubt, it at the same time prohibits you from going outside of the evidence to look for doubts upon which to acquit the defendant. The bare possibility of innocence does not acquit, and you are not at liberty to indulge in purely speculative doubts." An instruction that advises the jury that doubts must arise from the evidence has been held erroneous. *Densmore* v. *State* (1879), 67 Ind. 306; *Wright* v. *State* (1879), 69 Ind. 163.

The juror has no right to consider information or suggestions concerning the specific case which may have come to him in any manner other than as properly admitted evidence in the case; and, doubtless, the .instruction that jurors are prohibited from going outside of the evidence to look for doubts was intended to admonish the jurors to this effect. But if the language is interpreted, as it may well be, as prohibiting the jurors from relying upon their experiences and fund of general information, and indulging in speculation, for the purpose of ascertaining whether the evidence may be reconciled upon some

theory or hypothesis consistent with innocence, it is erroneous.

The instruction also tells the jurors that if they are convinced by the evidence to such a degree that they would be willing to act "in the more weighty and important matters relating to your own affairs, then you have no reasonable doubt." But the language approved by this court in many decisions is that the facts must have such convincing force that the jurors would be willing to act upon them in matters of the highest importance, affecting their dearest interests, where there is no compulsion to act at all; and an instruction fixing a lower standard of certainty is erroneous. *Bradley* v. *State* (1870), 31 Ind. 492; *Densmore* v. *State, supra.*

It is important that the rule that jurors shall be convinced of the guilt of the defendant beyond a reasonable doubt shall be uniformly applied in criminal cases. To accomplish this it is necessary that there be a fixed standard. The refusal of an instruction which correctly states the law is not error if the principle is covered by another instruction, although in entirely different language. Courts are not required to follow the language of approved instructions, and may use any language that will correctly express the principles involved, but the numerous decisions of this court, dealing with erroneous instructions, furnish ample evidence of the difficulties which may be involved in experimenting with new and untried phrases, and indicate the wisdom of adhering to approved instructions. It is error to give an instruction which incorrectly states the law. Definitions fixing a high standard in one case and a lower standard in another are not conducive to equal justice. Cases cannot be affirmed in the face of admittedly erroneous in-

structions, which, if correctly understood by the jury, permit conviction upon evidence of lesser weight than contemplated by law, since it cannot be said that a correct instruction would not have resulted in a different verdict. Justice requires that the guilt of all defendants shall be determined by the same standard. It is true that the statute provides that, "in consideration of the questions which are presented upon an appeal, the court shall not regard technical errors or defects, or exceptions to any decision or action of the trial court, which did not, in the opinion of the court to which the appeal is taken, prejudice the substantial rights of the defendant." Section 2394, Burns 1926, §9-2320, Burns 1933, §2384, Baldwin's 1934. This statute must be construed as having preference only to matters of practice and procedure, and to questions which do not go to the merits of the case. It was not intended to authorize this court to weigh the evidence and determine therefrom whether the jury would have reached the same verdict under proper instruction. A defendant is entitled to have the jury correctly instructed concerning the law. Any expression in the decisions which would seem to indicate that this court will consider the evidence in determining whether an erroneous instruction, involving the merits of the case, prejudiced the substantial rights of the defendant must be disregarded.

Appellant tendered an instruction to the effect that if the jury had a reasonable doubt as to whether the defendant was at Gary on the evening preceding the fire, with Nick Pasko, and purchased a can of gasoline, the defendant could not be convicted. This was properly refused. The purchase of the gasoline was but a circumstance tending to show guilt. The jury might have believed the defendant

guilty, while not convinced beyond a reasonable doubt. concerning the purchase of the gasoline.

For error in giving instruction No. 6, the judgment is reversed, with instructions to sustain appellant's motion for a new trial.