CROOKS *v.* STATE OF INDIANA.

[No. 26,969. Filed June 7, 1938. Rehearing denied
September 27, 1938.]

*Felix Blankenbaker,* and *R. C. McDivett,* for appellant.

*Omer S. Jackson,* Attorney-General, and *Ed A. Barce,* Deputy Attorney-General, for the State.

HUGHES, C. J.—The record in this case discloses that on October 1, 1937, an affidavit was filed charging the appellant with the statutory offense of sodomy; on October 2, 1937, the defendant was arraigned and entered a plea of guilty and the court imposed a fine of $100.00 and a prison sentence of two to fourteen years; on October 6, 1937, the defendant filed a.motion to vacate the judgment and asked permission to withdraw his plea of guilty; on October 11, 1937, the state filed a general denial and a reply to defendant's motion to vacate the judgment and also filed several affidavits showing the conditions and circumstances under which the defendant entered his plea of guilty. The cause was continued to October 15, 1937, for the purpose of giving the defendant's attorney time to secure evidence to support his motion to vacate the judgment; on October 15, 1937, the defendant filed an affidavit in support of his motion to vacate the judgment. The state filed a motion to strike the supporting affidavit which was sustained by the court and at the same time overruled appellant's motion to vacate the judgment and permit appellant to withdraw his plea of guilty. The appellant then filed his motion for a rehearing on defendant's motion to set aside the judgment and permission to withdraw his plea of guilty.

The state filed as stated above several affidavits showing the circumstances under which the appellant entered his plea of guilty. One affidavit was filed by one Ed Rowe; in this affidavit he stated that he was the acting marshal

in and for the town of Rockville, Parke County, Indiana; that he arrested the appellant on the night of September 30, 1937, and immediately took him to the Parke County jail in Rockville. That he did not in any manner try to induce the appellant to enter a plea of guilty nor did he make any threats for that purpose.

Warren Buchanan also filed an affidavit in which he stated that he was the qualified and acting Prosecuting Attorney of Parke County; that an affidavit was filed against the appellant on the 30th day of September, 1937; that he was informed that said appellant had been arrested and was confined in the Parke County jail; that he visited the appellant on the afternoon of October 1, 1937; that he was confined in the first floor prison section of said jail and the only other inmate was one Sam Jones; that the affiant explained to appellant the nature of the offense with which he was charged and that he could employ counsel to defend his cause or if he was without funds it was his right to have counsel appointed to defend him. He asked the appellant if he wanted to see an attorney, his father or brother; that the affiant in the presence of Sam Jones said he did not want to see an attorney or his father or his brother; that the affiant again visited the appellant on the morning of October 2, 1937, and that the appellant in the presence of Sam Jones told the affiant that he desired to enter a plea of guilty to the offense with which he was charged. That the affiant in the presence of Sam Jones told the appellant that if he entered a plea of guilty to the offense with which he was charged he would probably receive a sentence of from two to fourteen years; that the appellant told affiant he was twenty-nine years of age and thereupon the affiant told the appellant he would be sentenced to the State Reformatory at Pendleton, Indiana; that affiant further told the appellant in the presence of Sam Jones that if he was not guilty of the offense he should

not enter a plea of guilty thereto. That on the morning of October 2, 1937, the affiant advised Oscar Crooks that his son, the appellant, was in jail and that he should see the appellant and the said Oscar Crooks immediately went to the jail and talked to the appellant in the presence of Sam Jones; that the said appellant told his father, Oscar Crooks, in the presence of the affiant, that he was guilty of the offense with which he was charged.

The affiant further states that at no time did he unduly prosecute or unduly advise the appellant; nor at any time deny him the right to employ counsel or to have counsel appointed for him and at no time attempted to cause the appellant to enter a plea of guilty to a charge against him and that at all times he explained to the appellant the meaning of the charge filed against him and explained to him the consequences that would follow a plea of guilty.

Lawrence Smith filed an affidavit in which he stated he was the sheriff of Parke County; that he talked to the appellant while in jail on October 1, 1937, in the presence of Sam Jones who at that time was an inmate of the jail; that the said appellant told the affiant in the presence of Sam Jones that he intended to plead guilty to the charge pending against him; that the affiant explained to the appellant the meaning of the term arraignment; that it was his right to employ counsel or to have counsel employed to defend him. Affiant did not make any threat or make any inducements to cause him to enter a plea of guilty and that he believes the appellant entered his plea of guilty of his own free will and accord.

Sam Jones filed an affidavit in which he stated that he was an inmate of the Parke County jail on the 30th day of September, 1937, and was well acquainted with Harry Crooks, the appellant. During the time the affiant and the appellant were inmates together they were not

separated and could and did talk freely with each other; that Warren Buchanan visited the appellant at the jail on the afternoon of October 1, 1937; that he advised the appellant that he could employ counsel or have counsel employed to defend him against the crime charged in the affidavit. That Lawrence Smith visited the appellant on the evening of October 1, 1937, and he talked to the appellant in the presence of affiant; that the appellant told Smith that he knew and understood what he was charged with and why he was confined in jail and that he intended to plead guilty to the charge; that Warren Buchanan visited the appellant on the morning of October 2, 1937, and talked with appellant in the presence of affiant; that the said Buchanan told the appellant that if he entered a plea of guilty to the offense with which he was charged he would probably receive a sentence of from two to fourteen years; that said Buchanan advised the appellant that if he was not guilty of the offense he should not enter a plea of guilty; that the said appellant told affiant that he intended to plead guilty to the charge and the affiant believes that the appellant entered the plea of guilty of his own free will and accord; that at no time while the affiant and appellant were confined in the jail were any threats of any kind made by Buchanan, Smith or anyone else to induce the appellant to enter a plea of guilty.

The state called the appellant to testify as a witness over his objection on his own motion to vacate the judgment and to withdraw his plea of guilty. He was interrogated by the prosecuting attorney, Warren Buchanan, and also by the court in response to the question—"Did Judge Hancock say anything to you about appointing counsel to defend, and did he have the statute read to you and advise you what the punishment would be if you entered a plea of guilty to this charge   A. Yes, sir."

Judge Hancock interposed the following question: "Q.

Harry, the morning that you came in here for arraignment—try and remember carefully what the court said to you with reference—I will ask you if you remember of the court asking you to stand up over here and asking the Prosecuting Attorney to read the affidavit charging you with sodomy, and after the prosecuting attorney had read the affidavit, if you recall, that I told you that this is a serious offense, that if you entered a plea of guilty to this charge it will mean a fine of some hundred to a thousand dollars, and it would mean sentence to the Indiana State Reformatory of from two to fourteen years, that you had the privilege and right at that time to enter a plea of guilty or not guilty. That if you entered a plea of not guilty you had the right to have an attorney appointed for you by the court and that he would be glad to do it for your defense and that you had a right to a jury trial if you cared for it. That afterwards I ordered the Prosecuting Attorney to read to you the statute setting out what the penalty in this case was and thereupon, with that explanation, I asked you if you were ready to enter a plea to this charge. Do you remember that now,

"A. Yes, sir.

"Q. And that you answered and said to me that you were ready to enter a plea, is that right?

"A. Yes.

"Q. And I asked you what your plea was and you said your plea was guilty, is that right?

"A. Yes.

"Q. Thereupon I sentenced you from two to fourteen years and the minimum fine of one hundred dollars and told you that if you went down to the Reformatory and made a good prisoner and showed the law enforcing officers of this state that you were willing to do what was right, that in all probability within a reasonable time, as soon as your period of time had run out count-

ing I believe we figured three or four months you would get by reason of good behavior, we would be glad to assist you to get back. Do you remember me telling you that?

"Yes, sir.

"Q. And during that conversation you were standing right over here (indicating) and sitting right over there (indicating) when all that conversation was had, is that right?

"A. Yes, sir.

"Q. Do you think, Harry, is it your honest opinion that the Judge of this court took advantage of you in any manner in that arraignment?

"A. Well, I can't say.

"Q. Don't you think he was just as fair to you as a person could be in explaining all that to you?

"A. Yes, sir, you were, but . . .

"Q. Talk right out. If you think I took advantage of you in any way I want to know it, and I promise you if you will show me where I have, I will resign my office tomorrow.

A. "No, you haven't."

The appellant insists that the court erred in permitting the state to question him concerning his motion to vacate the judgment and withdraw his plea of guilty. All of the questions asked the appellant were concerning his motion to vacate the judgment and request to withdraw his plea of guilty. The question of the guilt or innocence of the appellant was not in issue and we think it was not improper to question the appellant on the particular subject-matter under investigation. Upon the hearing of a motion for leave to withdraw a former plea, it is competent for the court to hear such evidence, oral or written, as either party may offer, and if affidavits are offered by either party, the opposite

party may orally examine the affiants. *Conover* v. *State* (1882), 86 Ind. 99.

It is insisted by the appellant that the court committed error in striking out the supporting affidavit of the appellant. It amounted to no more than a statement of his innocence, and, if error, it was harmless, for in his motion to vacate the judgment he alleged that he was innocent of the crime charged.

The latest expression of this court upon the right of one to withdraw a plea of guilty is found in the case of *Loucks* v. *State* (1937), 213 Ind. 108, 11 N. E. (2d) 694. After quoting from the case of *Rhodes* v. *State* (1927), 199 Ind. 183, 156 N. E. 389, the court said (p. 113):

> "It is evident from the foregoing that the crucial test of the trial court's action in accepting a plea of guilty is whether the defendant entered his plea of guilty 'freely and understandingly.' If the acts which constitute the alleged offense are such that the defendant can readily understand whether he has committed them, and if he understands that his plea of guilty amounts to an acknowledgment that he has committed the acts in question, and if he also understands the legal consequences of this acknowledgment, a trial court should accept a plea of guilty."

And it has been decided by this court in many cases that an application for the withdrawal of a plea of guilty voluntarily made is addressed to the sound discretion of the trial court, and unless such discretion is abused the court on appeal will not interfere with its exercise. *Lamick* v. *State* (1925), 196 Ind. 71, 147 N. E. 139; *Farnsley* v. *State* (1925), 196 Ind. 722, 149 N. E. 436; *Nahas* v *State* (1927), 199 Ind. 117, 155 N. E. 259.

In the instant case there was no evidence to show that the appellant's plea of guilty was not entered by him

freely and understandingly. He had discussed the case with different persons and stated he was guilty and intended to enter a plea of guilty. The evidence shows that he was thoroughly advised by the prosecuting attorney and the court as to his rights under the law and as to the result of a plea of guilty. There is nothing in the record to show any abuse of discretion of the trial court in accepting appellant's plea of guilty or in overruling the appellant's motion to vacate the judgment and permit the withdrawal of the plea of guilty.

Judgment affirmed.