CHARLES WAYMOND EWING v. STATE OF INDIANA.

[No. 3-775A149. Filed December 27, 1976.]

*Harriette Bailey Conn*, Public Defender of Indiana, *William B. Bryan*, Deputy Public Defender, for appellant.

*Theodore L. Sendak,* Attorney General, *Joseph J. Reiswerg,* Deputy Attorney General, for appellee.

GARRARD, J.—Appellant, Charles Ewing, pleaded guilty to a charge of carrying a pistol without a license in violation of the Uniform Firearms Act. The plea resulted from a plea bargain whereby the state agreed to recommend an executed five year sentence and dismiss several other felony charges pending against Ewing. After he commenced serving the sentence, Ewing petitioned to have his plea set aside pursuant to Indiana Rules of Procedure, Post-Conviction Remedy Rule 1. The trial court denied relief. This appeal follows.

Ewing's plea was entered on September 7, 1973, before a judge *pro tem.* On July 26, 1973, the new criminal procedure statute containing the following had become effective:

"35-4.1-1-3 [9-1204]. Plea of guilty—Defendant advised by court.—The court shall not accept a plea of guilty from the defendant *without first addressing* the defendant and

(a) determining that he understands the nature of the charge against him;

(b) informing him that by his plea of guilty he is admitting the truth of all facts alleged in the indictment or information or to an offense included thereunder and that upon entry of such plea the court shall proceed with judgment and sentence;

(c) informing him that by his plea of guilty he waives his rights to a public and speedy trial by jury, to face the witnesses against him, to have compulsory process for obtaining witnesses in his favor and to require the state to prove his guilt beyond a reasonable doubt at a trial at which the defendant may not be compelled to testify against himself;

(d) informing him of the maximum possible sentence and minimum sentence for the offense charged and of any possible increased sentence by reason of the fact of a prior conviction or convictions, and of any possibility of the imposition of consecutive sentences;

(e) informing him that the court is not a party to any agreement which may have been made between the prosecutor and the defense and is not bound thereby.

35-4.1-1-4 [9-1205]. Determination of voluntariness of plea of guilty.—

(a). The court shall not accept a plea of guilty *without first personally addressing* the defendant and determining that the plea is voluntary. The court shall address the defendant and determine whether any promises, force or threats were used to obtain the plea.

(b) The court shall not enter judgment upon a plea of guilty unless it is satisfied from its examination of the defendant that there is a factual basis for the plea.

(c) A plea of guilty shall not be deemed to be involuntary under subsection (a) of this section solely because it is the product of an agreement between the prosecution and the defense." (Emphasis added)

It is not disputed that the judge was present throughout the proceeding, and that at its conclusion he accepted the plea. However, at Ewing's arraignment and plea, it was the prosecuting attorney who advised Ewing of his constitutional rights and the charges pending. It was also the prosecutor who elicited Ewing's understanding of those matters.

That the statute was newly effective and the presiding judge was not the regular judge of the court may explain the non-compliance. It does not excuse it. Error was committed when the statute was not adhered to. The only viable question on appeal is whether that error requires reversal. A footnote appended to our Supreme Court's opinion in *Williams* v. *State* (1975), 263 Ind. 165, 325 N.E.2d 827 has speculated that it might.[1]

We are, of course, aware that footnotes are comments upon the text rather than a part of it. Upon the facts in *Williams,* the comment is clearly *dictum.* Nevertheless, its inclusion with the opinion is intended to benefit the bench and bar. Especially where, as here, it occurs in a current decision, it merits respect from an intermediate court and requires special consideration.

1. The footnote was repeated immediately thereafter in *Emert* v. *State* (1975), 263 Ind. 340, 330 N.E.2d 750.

The principle potentially opposing reversal is the familiar concept that a conviction will not be reversed for an error which *does not prejudice the substantial rights* of the defendant. *See, e.g., Brown* v. *State* (1964), 245 Ind. 604, 201 N.E.2d 281. Legislative expression of the principle appears in IC 1971, 35-1-47-9 (Burns Code Ed.) which was originally enacted in 1905:

> "In consideration of the questions which are presented upon an appeal, the court shall not regard technical errors or defects, or exceptions to any decision or action of the trial court, which did not, in the opinion of the court to which the appeal is taken, prejudice the substantial rights of the defendant."

In *Beneks* v. *State* (1935), 208 Ind. 317, 329, 196 N.E. 73, 77, the Supreme Court construed the statute:

> "This statute must be construed as having reference only to matters of practice and procedure, and to questions which do not go to the merits of the case."[2]

The rule is similarly repeated in the rules of our Supreme Court and Court of Appeals as a portion of AP. 15 (E) :

> ". . . nor shall any judgment be stayed or reversed, in whole or in part, where it shall appear to the court that the merits of the cause have been fairly tried and determined in the court below."

Thus, to "prejudice the substantial rights of the defendant" the alleged error must affect, at least potentially, the merits of the cause. The concept applies to confessed cases as well as contested ones, although what constitutes the "merits" of the former may differ somewhat from those of the latter. Here the statutory sections concerning the acceptance of a guilty plea are clearly procedural. They are part of a statute entitled "An act to amend IC 1971, title 35 concerning criminal procedure."

---

2. The Northeastern Reporter contains the quotation in this form. In 208 Ind. at 329, the word "reference" appears as "preference." The passage was quoted with approval in *Madison* v. *State* (1955), 234 Ind. 517, 527, 130 N.E.2d 35, 39. However, the same error occurs. 130 N.E.2d 39 states "reference," and 234 Ind. 527 repeats "preference." We have reviewed the opinion as officially recorded. "Reference" is correct.

What must be determined is whether having the trial judge advise an accused and elicit his responses to questions has such an impact upon the merits of the plea that substantial rights of the accused are prejudicially affected if the colloquy with the accused is conducted by anyone else.

> Traditionally the cardinal requisites—the merits—of a guilty plea proceeding are that the plea be knowingly, voluntarily and intelligently entered. *See, e.g. Crooks* v. *State* (1938), 214 Ind. 505, 15 N.E.2d 359.

To insure the presence of these requisites, other requirements, such as providing counsel trained in the law, have been added and have achieved such independent significance that courts will not look behind their omission to determine whether the plea was nevertheless meritorious.

In *Boykin* v. *Alabama* (1969), 395 U.S. 238, the United States Supreme Court found it essential to an intelligent, voluntary plea that a criminal accused be aware of his constitutionally guaranteed rights against self-incrimination; to a trial by jury; and to confront his accusers. The court held that a waiver of these rights was necessary to an intelligent and voluntary plea, and that such a waiver could not be presumed where the record was silent as to the accused's knowledge that he had such rights or that he understood them.[3]

IC 1971, 35-4.1-1-3 and 4 represent a similar legislative mandate for Indiana, expanding the matters an accused must be aware of to insure a knowing, voluntary plea.

Turning to the function of the trial court in a guilty plea proceeding, it is an elementary absolute that the court must decide—and decide upon the record made—that the plea is

---

3. Where knowledge and understanding are shown, we have held intent to waive implicit in an accused's expressed desire to proceed with a plea of guilty.

knowing and voluntary. *Williams* v. *State, supra.*[4] However, after carefully considering *Boykin* and its progeny, the Court in *Williams* concluded that the substantial rights recognized in *Boykin*, as constitutionally required, regarded *what* the record must show the defendant understood, not *who* must make the record.

In view of the statute we must now carry that inquiry one step further. In *Williams* the Court underscored the desirability of the trial judge advising the defendant. Not only does that practice present a better image of the courts, it helps to insure the correctness of the result. By placing the judge in the role of participant rather than spectator, he will possibly be more attuned to the responses or any hesitancy on the part of the accused. Furthermore, it appears at least capable of argument that such a method may confer an additional benefit upon the accused. If he should, in fact, be unaware of his rights, and if an awareness of his rights would actually make a difference in his desire to plead guilty (conceding that many times it would not), then it might be argued that his objection would much more likely be voiced if the judge, the impartial arbiter, were advising him and inquiring of his desires and understanding. On the other hand, where an accused's rights *are* carefully explained in court and where *it is* meaningfully elicited that he fully understands and nevertheless desires to waive those rights and plead guilty, and all this is done formally in the presence of the court; it appears to unduly exalt form over substance to contend on appeal that the merits of the plea have been seriously affected and substantial rights of the defendant have been prejudiced simply because someone other than the judge asked all or a few of the questions.

---

4. "Nothing we have said, however, may be interpreted as relieving the trial court of its absolute duty to decide, on the basis of the evidence in the record before it, whether a defendant's plea is made voluntarily and understandingly." 325 N.E.2d at 833.

The determination of whether a guilty plea has been intelligently and voluntarily entered is primarily factual. Our accepted standards of appellate review defer to the trial court on such a decision unless from the evidence produced the *only* reasonable conclusion is contrary to that reached by the court. *Roberts* v. *State* (1975), 263 Ind. 53, 324 N.E.2d 265. Thus, when the trial court is confronted with a PCR 1 petition seeking to set aside a plea upon the grounds that the plea was not intelligently and voluntarily entered, it conducts a hearing upon those allegations to determine their truth. If the court determines that the prerequisites for a valid plea were not met, its duty is to vacate the plea. If there is a question about the sufficiency of the advice given to an accused and whether his plea was intelligently tendered, the court should consider among the facts and circumstances exactly what the record discloses the accused was told, what his responses were, and the extent to which the trial judge *established* the accused's understanding at the time. In considering the sufficiency of the evidence to support the utimate conclusion, it is clearly germane to consider the extent to which the judge participated actively in the proceeding. If the court concludes by a simple preponderance of the evidence that the plea was not intelligently and voluntarily given, the plea should be set aside. On the other hand, where the court determines that the petitioner has failed to establish his claim by a preponderance of the evidence, the petition should be denied. In neither event is it our function on appeal to reweigh the evidence or redetermine the credibility of witnesses.

When it is determined that a criminal defendant must be aware of certain specific things as a *sine qua non* to his ability to intelligently and voluntarily decide to plead guilty, it is sensible to require that the record disclose that when the plea was entered, he was aware of those specifics. **To** hold otherwise not only results in the proliferation of needless appeals, it deprives an appellate court of a sound basis

for real review. *Boykin* and *Williams* underscore this, and in the absence of a record clearly demonstrating that the necessary specifics were discussed, we will not defer to the trial court's ability to determine the broader factual question of voluntariness.

The same reasoning does not support a requirement that would prohibit the trial court's factual determination of whether a plea was intelligently and voluntarily entered based upon whether the judge or someone else provided the defendant with the necessary advice. The impact of *who* gave the advice may have a bearing upon the subjective fact-oriented question of whether the accused did understand and did voluntarily choose to plead guilty. It does not, however, appear to have any substantial impact upon either what he must understand to be able to make an intelligent plea, or what the record must demonstrate to enable us to make a meaningful review. Accordingly, there appears to be no substantial basis for depriving the trial court of its function to determine the ultimate facts on the basis of who did the advising and questioning.

When Ewing was advised of his rights and the consequences of his plea, the record indicates that to each question he promptly and unambiguously responded that he understood. He indicated that he was the recipient of a plea bargain under which the state agreed to dismiss other pending felony charges in exchange for the plea. After being advised, he clearly indicated his desire to plead guilty. It appears that he has failed to demonstrate any harm from the error of the court in failing to comply with the portions of IC 1971, 35-4.1-1-3 and 4 which provide that the judge shall personally address the defendant regarding his rights and the consequences of his plea. Therefore, the error is not reversible error.

Even so, another question must be considered. One of the functions of appellate courts is administrative control of trial court procedures. In the exercise of that function, we are occasionally justified in mandating reversal of a judgment or conviction as a prophylactic device to insure trial court adherence to proper procedure. Does our administrative function support such action in this case? Stated conversely, if we fail to reverse will courts be encouraged to disregard the legislative directive and the admonition in *Williams* that the trial judge conduct the inquiry?

We think not. The act of the legislature clearly directs the trial judge to address the defendant and advise him of the matters enumerated. A judge who deliberately refused to do so would violate Canon 2A of the Code of Judicial Conduct:

"A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

No such assertion appears in this case. Indeed, no objection was made to the prosecutor advising the defendant nor was the court requested to do so personally.

In considering a potential administrative sanction, we must also look to the impact reversal would have upon the class of cases involved. Ewing's appeal is fairly typical of many requests for post-conviction relief. The petition was filed nearly a year after the plea was entered and the hearing was held approximately three months thereafter. As time lapses, witnesses lose interest, become forgetful and become difficult to locate. Upon vacating a guilty plea months or years after an offense was committed, the court is confronted with more than the mere cost of a full blown trial. It may often be confronted with the prospect of a guilty defendant going free because evidence once readily available is no longer at hand. While such speculation will not deter us for a moment from granting a new trial where substantial doubt has arisen regarding the validity of the merits of the conviction—

whether by plea or initial trial—it does operate as a deterrent when no such doubt appears.

Upon consideration of both factors, we believe we are not required to impose the sanction of reversal to insure that our courts will properly comply with the statute. We therefore hold that *reversible* error was not committed by the trial court when it found at the post-conviction relief hearing that Ewing failed to establish that he was entitled to withdraw his plea because the judge has not personally advised him of his rights as required by the statute.[5]

We turn then to the remaining allegations raised by Ewing. He complains of the words used to advise him of his right to confront his accusers and his right to remain silent.

Similar language was found adequate in *Barron* v. *State* (1975), 164 Ind. App. 638, 330 N.E.2d 141, and *Janigon* v. *State* (1975), 164 Ind. App. 696, 330 N.E.2d 389. We cannot say there was prejudicial error in the court's finding that Ewing understood. On the same authorities, we also reject Ewing's objection to the use of a pre-printed questionnaire.

Also, we can find no reversible error in the court's failure to set aside the plea because Ewing was not expressly told that he waived his rights by pleading guilty or that the court was not bound by his plea bargain agreement. We again emphasize that the statute should be fully complied with. Its terms provide that the accused shall be informed that by pleading guilty he waives the rights enumerated in IC 1971, 35-4.1-1-3(c). However, we have heretofore held that such a waiver is, of course, implicit in the act of electing to plead guilty with a full understanding of one's rights. *Vernor* v. *State* (1975), 166 Ind. App. 363, 336

---

5. We conclude, therefore, that the *Williams* footnote was added for good reason, but the reason was to dramatically underscore the desirability of the trial judge personally advising the accused and the risk of factually securing non-understanding pleas where this is not done. *Compare, also, Norfrey* v. *State* (1976), 171 Ind. App. 590, 358 N.E.2d 202.

N.E.2d 415. Furthermore, while Ewing was not told that the court was not bound by the plea bargain, the bargain was set forth and was, in fact, followed by the court. Again, Ewing cannot claim harm.

Finally, Ewing charged that he was represented by incompetent counsel. In part, the argument seeks to have us credit Ewing's account at the PCR hearing as to what he understood that he was pleading to and the penalty against the record made at the original arraignment. This, of course, we cannot do.

The remainder of the argument seeks to establish original counsel's incompetence because the firearms charge was originally pressed by Ewing's wife and she was willing to dismiss it. The trial court ignored the question for her *ability* to dismiss a criminal charge, and looked instead to the other felony charges then pending against Ewing which were dismissed in return for the plea. The court concluded that Ewing was well represented by his counsel. We agree.

Affirmed.

Hoffman, J., concurs; Staton, P.J., dissents and files separate opinion.

### DISSENTING OPINION

STATON, P.J.—I dissent from the majority opinion. I would grant Ewing a new trial for these two reasons:

First, I do not consider Justice Hunter's statement in *Williams* v. *State* (1975), 263 Ind. 165, 325 N.E.2d 827 mere dictum which may be disregarded.[1] I consider it in the light of a policy directive, a new standard of justice which must be observed by all Indiana Courts in the administration of justice. Certainly, this was the intent of the Indiana Legislature when it enacted IC 1971, 35-4.1-1-3 and 35-4.1-1-4.

---

1. "If this statutory standard had been applicable at the time of petitioners' pleas, and if the record was identical to the one before us, petitioners would undoubtedly have presented a solid case for post-conviction relief."

The prosecuting attorney is a party to the plea negotiations; he has an interest in the acceptance of the plea by the trial court as negotiated. If he is permitted to control the entire guilty plea proceeding by asking the questions on a printed form, the voluntariness of the guilty plea may be obscured. For example, before the guilty plea is presented to the trial court, the defendant may have gone over the questions asked in the guilty plea form with the prosecutor and his defense counsel. Explanations may have been made to the defendant which superficially satisfy his questions. The defendant's agreement rather than his understanding may predominate this meeting.[2] Furthermore, the answers given by the defendant to the questions on the printed guilty plea form may be considered by the parties as a former consummation of their guilty plea agreement. An objective approach to the question of voluntariness may have been blunted by more complicated and detailed parts of the plea negotiations. Only an objective, impartial interrogation of the defendant when he enters his guilty plea can assure that the plea is entered voluntarily.

In Ewing's plea, only the prosecutor interrogated him as to the voluntariness of his plea. Most of the questions were answered with a simple "yes" or "no". The trial court remained mute. This procedure has the appearance of leaving the administration of justice in the sole hands of the prosecuting attorney with the trial court as an acquiescent bystander. This procedure is contrary to the policy enunciated by Justice Hunter in *Dube* v. *State* (1971), 257 Ind. 398, 275 N.E.2d 7 and later repeated by Chief Justice Givan in *Watson* v. *State* (1973), 261 Ind. 97, 300 N.E.2d 354:

> "It is important for all segments of our society to believe that our court systems dispense justice. This includes the

2. Obviously, there are plea negotiations between the prosecutor and the defense counsel where the defendant is never present. Competency of defense counsel is sometimes questioned on appeal because his advice to the defendant is not on the record. The elapse of time and a heavy case load may dull the memory of defense counsel as to the exact advice given in every case. The statutes place the responsibility for the administration of justice where it belongs—on the trial court.

criminals themselves as well as the law abiding citizens and especially those criminals who have cooperated fully in police investigations."

Unless the statutory safeguards are applied equally rather than at random by the trial courts, this policy can never become a reality.

Secondly, the statutory safeguards, IC 1971, 35-4.1-1-3 and 35-4.1-1-4, which require the trial court to address the defendant have constitutional overtones. As pointed out in *Boykin* v. *Alabama* (1969), 395 U.S. 283, 89 S.Ct. 1709, 23 L.Ed.2d 274, "Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth." The *Boykin* Court refused to presume a waiver of this important constitutional right from a silent record. Under Indiana law, greater protection is afforded the defendant.

A silent trial court which has failed to address the defendant as mandated by the Indiana Legislature can not effect a voluntary guilty plea. The fundamental rights of the defendant must be observed by the trial court. Substantial compliance with the statutory mandate by the trial court is required. *Norfrey* v. *State* (1976), 171 Ind. App. 590, 358 N.E.2d 202.

NOTE.—Reported at 358 N.E.2d 204.