Bruce C. GRANT, Jr., Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 37A03–9108–PC–246.

Court of Appeals of Indiana, Third District.

Jan. 27, 1992.

Bruce C. Grant, Jr. pro se.

Linley E. Pearson, Atty. Gen., Mary Dreyer, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

GARRARD, Judge.

Appellant Bruce C. Grant, Jr. (Grant), pleaded guilty to one count of burglary, a Class B felony. The plea was the result of a plea bargain with the state. When his probation was revoked, he was sentenced to serve out his term. He later filed a verified petition for post conviction relief. He presented one issue for the trial court

1. IC 35–43–2–1.

to consider. Grant alleged that his guilty plea was not freely, knowingly and voluntarily made. The trial court denied relief and this appeal followed.

History of the Case

In January 1985, a hearing was held on the Jasper County Prosecutor's motion for waiver of juvenile jurisdiction. Attached to the motion were various instruments that alleged that Grant was a delinquent child and had committed three Class B felony burglaries during the months of December 1984 and January 1985. At the time Grant was 17 years of age. During the hearing, the trial court stated:

THE COURT: And you understand that if the Prosecutor chose to file them in a certain manner that you could be charged with three B felonies which could contain a penalty of up to 20 years each; that if they're unrelated, they could be served consecutively for 60 years and further that the Prosecutor could add on to that a Habitual charge for another 30 years? Do you understand that?

THE JUVENILE: Yes.

THE COURT: That you are facing a total of 90 years in prison on the charges alleged?

THE JUVENILE: Yes.

Record at 30. The trial court granted the state's motion and jurisdiction over Grant was waived to adult court.

By way of information, the state charged Grant with three burglaries, each of which were Class B felonies, on February 26, 1985. A plea agreement was subsequently entered into whereby the state would drop Counts II and III and Grant would plead guilty to Count I.

On July 1, 1985, Grant withdrew his plea of not guilty to Count I and entered a plea of guilty as set out in the plea agreement. The trial court proceeded to arraign Grant on Count I only. The trial court explained the charging information, the statutory definition,[1] and the possible penalty for a

Class B felony.[2]  Grant responded affirmatively when asked if he understood the nature of the crime and the possible penalties therefor.  Record at 74–76.  The trial court further advised Grant of his rights in compliance with IC 35–35–1–2.[3]  Record at 76–79 and 84–86.  The trial court read into the record the plea agreement.  After establishing a factual basis, the trial court accepted the plea agreement.  Sentencing was delayed pursuant to the plea agreement.  Grant was then in the custody of the Indiana Department of Corrections and was, by the delay in sentencing, allowed to complete his course work at the Rockville Training Center.

Sentencing upon the guilty plea was held on November 5, 1985.  At the hearing the trial court addressed Grant, in part, as follows:

THE COURT: The Court, I think, maybe indicated to you in one of the preliminary hearings, this is a Class B Felony that carries a presumptive sentence of 10 years in prison, to which the Court can add an additional 10 years.  There was [sic] three of those, which means that you were facing a possible sentence of 60 years, and to which the State of Indiana, if they had chosen, could have tacked an habitual criminal charge on to that, which you would certainly qualify for that if convicted on all those.  That would be an additional 30 years.  So, for the crimes committed, you were facing a total possible sentence of 90 years, which means if you were on your best behavior in prison and got the full credit of a day for day credit for time served, you would have a sentence of 45 years.

Record at 199.  This exchange occurred after the court had heard testimony from witnesses for Grant and just prior to handing down the sentence.  Grant was sentenced to the presumptive term of ten years.  The trial court suspended all but two years and placed Grant on probation for eight years.[4]  Grant's probation was revoked on August 22, 1988 and he was ordered to be confined to the Indiana Department of Corrections for a period of 10 years, minus time already served.[5]

On April 15, 1991 Grant filed a verified petition for post conviction relief.  Grant alleged that his guilty plea was not freely, knowingly and voluntarily made.  He supported his argument with the fact that at the juvenile waiver hearing, the trial judge erroneously advised him that he could be eligible for an habitual offender charge and thereby face a possible 90 year sentence.  Additionally, the trial court, at the sentencing hearing, recounted its prior discussion of possible maximum sentences.  Grant argues that he met his burden of proof in showing that his guilty plea was made in ignorance of the true possible penalties and that he was actually misled by the trial judge about the choices before him.

---

2.  IC 35–50–2–5.

3.  This section reads in Part:
(a) The court shall not accept a plea of guilty ... without first determining that the defendant:
(1) understands the nature of the charge against him;
(2) has been informed that by his plea he waives his rights to:
(A) a public and speedy trial by jury;
(B) confront and cross-examine witnesses against him;
(C) have compulsory process for obtaining witnesses in his favor; and
(D) require the state to prove his guilt beyond a reasonable doubt at a trial at which the defendant may not be compelled to testify against himself;
(3) has been informed of the maximum possible sentence and minimum sentence for the crime charged and any possible increased sentence by reason of the fact of a prior conviction or convictions, and any possibility of the imposition of consecutive sentences; and
(4) has been informed that if:
(A) there is a plea agreement as defined by IC 35–35–3–1; and
(B) the court accepts the plea;
the court is bound by the terms of the plea agreement.

4.  The trial court was willing to suspend more days so that Grant would be able to start college classes in the second semester.  Grant was released from the Jasper County Jail on January 2, 1986 and began his probation then.  Record at 5.

5.  On August 7, 1987 Grant was found to be in violation of probation and sentenced to serve 16 days in the Jasper County Jail.  His probation was thereafter modified so that he could live in Indianapolis to attend school.

Discussion

## I. Habitual Offender Statute

■ Grant maintains that under the facts of his case he was not subject to the habitual offender enhancement of his sentence. We agree. The applicable habitual offender statute reads in part:

(a) The state may seek to have a person sentenced as an habitual offender for any felony by alleging, on a page separate from the rest of the charging instrument, that the person has accumulated two (2) prior unrelated felony convictions.

(b) After he has been convicted and sentenced for a felony committed after sentencing for a prior unrelated felony conviction, a person has accumulated two (2) prior unrelated felony convictions....

IC 35–50–2–8. In *Miller v. State* (1981), 275 Ind. 454, 459, 417 N.E.2d 339, 342, our supreme court held that:

It is clear from the statute that to sustain a sentence under it, the State must show that the defendant had been previously *twice convicted* and *twice sentenced* for felonies, that the commission of the second offense was subsequent to his having been sentenced upon the first and that the commission of the principal offense upon which the enhanced punishment is being sought was subsequent to his having been sentenced upon the second conviction. (emphasis in original)

It is clear that the trial judge erroneously informed Grant that the state, if it had chosen, could have subjected him to a 30 year enhancement of his burglary sentences under the habitual offender statute. The necessary sequence of felony commission, then felony conviction, was not present.[6] The commission of all the burglaries at issue occurred before a conviction upon any one of them.

## II. Review of Guilty Pleas

■ The case of *White v. State* (1986), Ind., 497 N.E.2d 893, controls in the case at bar. Chief Justice Shepard's opinion reviewing the history of post-conviction relief in Indiana, in addition to the federal rule, overruled the case of *German v. State* (1981), Ind., 428 N.E.2d 234. Under *German*, a defendant was entitled to relief if the trial judge had not strictly followed the Code. *White*, 497 N.E.2d at 896. We, like the *White* court, are unable to pinpoint the constitutional or statutory origin of the *German per se* rule. It was best characterized as a prophylactic rule. *Id.* at 900.

■ We have recognized that voiding plea agreements because of technical non-compliance with the statute carries with it substantial costs to society. The *White* court paraphrased Chief Justice Designate Rehnquist:

Jurors, witnesses, judges, lawyers, and prosecutors may be required to commit further time and other resources to repeat a trial which has already taken place. The victims are caused to re-live frequently painful experiences in open court. The erosion of memory and the dispersal of witnesses may well make a new trial difficult or even impossible. If the latter is the case, an admitted perpetrator will be awarded with freedom from prosecution. Such results prejudice society's interest in the prompt administration of justice, reduce the deterrent value of any punishment, and hamper the rehabilitation of wrongdoers. (citation omitted)

*White*, 497 N.E.2d at 905. *See also Ewing v. State* (1976), 171 Ind.App. 593, 601–02, 358 N.E.2d 204, 209. If after our review of the complete record, however, it is clear that either (1) the trial judge failed to give one of the *Boykin*[7] rights or (2) the defendant demonstrates that he was prejudiced by the trial court's non-compliance with the

---

6. *See Miller v. State, supra,* for a discussion of the purposes for the required sequencing of first crime commission, then conviction. 275 Ind. at 459, 417 N.E.2d at 342.

7. *Boykin v. Alabama* (1969), 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (*Boykin* rights include knowing waiver of, right of jury trial, right of confrontation and right against self-incrimination).

statute, we will not hesitate to set aside the guilty plea.

It was Grant's burden to demonstrate, by the preponderance of the evidence, that the trial judge's erroneous advice on his possible maximum sentence prejudiced him in such a fashion as to render his decision to plead guilty pursuant to the plea agreement involuntary and unintelligent. *See White*, 497 N.E.2d at 905. Pleading the mere fact that the trial judge was in technical non-compliance with IC 35–35–1–2 is insufficient to meet this burden. Absent a constitutional defect or an act inconsistent with due process, plea agreements ought not be set aside when based simply upon technical failures made by a trial judge in not strictly complying with IC 35–35–1–2. *Accord Keel v. U.S.* (5th Cir.1978), 585 F.2d 110.

"Defendants who can prove that they were actually misled by the judge ... about the choices before them will present colorable claims for relief." *White*, 497 N.E.2d at 905–06. Clearly the trial judge misstated the habitual offender statute's applicability to Grant. Grant does not claim that, if he had known the correct possible penalty, he would have changed his decision. He does not allege any specific facts which would suggest that his decision was the result of coercion or of his actually being misled. The transcript of his plea hearing contains extensive questioning by the trial judge about the voluntariness of his plea. *See White*, 497 N.E.2d at 906.

Whether a guilty plea has been taken intelligently and voluntarily is a factual matter. We will defer to the trial court on such a decision "unless from the evidence produced the only reasonable conclusion is contrary to that reached by the court." (citation omitted). *Ewing v. State, supra,* 171 Ind.App. at 599, 358 N.E.2d at 208. Grant was faced with what he thought was a possible 90 year prison term for three counts of burglary. He bargained for sentencing on one count with a maximum of 20 years and a presumptive of 10 years. He received 10 years with eight suspended. We find it incredible that he now comes forward to allege that, if he had been told correctly that the maximum he faced was 60 years rather than 90, he would have rejected the plea and would have chanced acquittal or conviction on all three counts. *See Allen v. U.S.* (5th Cir.1981), 634 F.2d 316, 317.

We acknowledge that there may well be circumstances where the mistake about the maximum sentence is so substantial and pervasive as to infect the entire proceeding and amount to the improper coercion of the defendant to take a plea agreement. The facts before us convince us that the case at bar is not such an instance. Under the facts of this case we find it quite reasonable that Grant would not have been less likely to enter into his plea agreement if he would have been properly advised by the trial court at the juvenile waiver hearing.[8] To the 17 year old defendant a possible 60 year sentence is reasonably every bit as coercive as a sentence of 90 years. While the prospect of a long sentence undoubtedly has a coercive effect upon a defendant, that effect is not improperly coercive where the sentence might properly be imposed by the court.

In spite of Grant's novel approach presented by his *pro se* brief, his claim is an inadequate basis for vacating his guilty plea. The reality of the circumstances convinces us that Grant was not prejudicially influenced by the court's misstatement. No reversible error has been shown.

Affirmed.

STATON and BAKER, JJ., concur.

---

**8.** We do not see how the trial judge's comments at the sentencing hearing could have improperly prejudiced Grant. The comments were made well after both Grant and the court had accepted the plea agreement. The court was merely reflecting upon the seriousness of the offenses before handing down sentence.