RICHARD L. OWEN *v.* STATE OF INDIANA.

[No. 1-275A32. Filed December 16, 1975. Rehearing denied January 20, 1976. Transfer denied May 5, 1976.]

*Harriette Bailey Conn, (Mrs.),* Public Defender of Indiana, *Darrell F. Ellis,* Deputy Public Defender, for appellant.

*Theodore L. Sendak,* Attorney General, *Walter F. Lockhart,* Deputy Attorney General, for appellee.

LOWDERMILK, J.—Defendant-appellant Richard L. Owen (Owen) brings this appeal from a denial of his petition for post-conviction relief.

## FACTS.

In October, 1970, Owen was charged with the crime of robbery while armed. However, after negotiations between Owen's trial attorney and the prosecutor, the original charge was dismissed and Owen pled guilty to a charge of theft.

The record discloses no further action with regard to the theft conviction until October, 1971, at which time the trial court received a petition for post-conviction relief, which alleged that the guilty plea was "obtained by trick," and that Owen's counsel was "ineffective." Owen's name appears on the petition, and the body of the petition makes it clear that it was directed to the theft conviction. This petition, however, was not signed by Owen, nor was it notarized.

Nonetheless, upon receiving the petition, the court forwarded a copy to the prosecutor and appointed a public defender for Owen. Although the State filed an answer to the petition it does not appear that a hearing was held. On December 7, 1971, the court denied the petition, and Owen received word of the same sometime shortly thereafter. No appeal was taken from this denial.

Next, on November 20, 1973, a second, *pro se,* petition for post-conviction relief was filed by Owen; this one generally alleging that the court violated rights under the Indiana and United States Constitutions. The facts set out in the petition in support of the alleged error establish that the "violations" were a failure to advise Owen of certain constitutional rights (i.e., self-incrimination, confronting accusers, cross-examination) before his guilty plea was accepted.

Again the trial court appointed a public defender for Owen, and the State filed answers to the original petition and an amended petition filed by Owen's appointed counsel. A hear-

ing was subsequently held and the trial court denied the petition, specifically finding that a prior petition had been filed and denied, and that Owen had failed to establish the allegations of error contained in the second petition.

## ISSUES.

The only issue presented by Owen is whether his guilty plea was knowingly and intelligently entered.[1] Before considering this issue, however, we must address two preliminary questions raised by the State, namely:

1) Whether Owen has waived the present question by failure to include it in the first petition.

2) Whether Owen is estopped to deny his plea bargain with the State.

## I.

The State's first argument is based on Indiana Rules of Procedure, Post-Conviction Rule 1, Sec. 8, which states:

"Waiver of or failure to assert claims. All grounds for relief available to a petitioner under this rule must be raised in his original petition. Any ground finally adjudicated on the merits or not so raised and knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence, or in any other proceeding the petitioner has taken to secure relief, may not be the basis for a subsequent petition, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original petition."

The State contends that Owen had an opportunity to raise the present allegations in the original petition and that the failure to do so amounts to a waiver of the same. Further,

---

1. At various points in his brief Owen states the alleged error as a failure by the trial court to advise him of certain constitutional rights. Owen's plea was prior to the enactment of IC 1971, 35-4.1-1-3, Ind. Ann. Stat. Sec. 9-1204, and were this his only statement of error, he would be clearly incorrect. *See, Williams v. State* (1975), 263 Ind. 165, 325 N.E.2d 827; *Barron v. State* (1975), 164 Ind. App. 638, 330 N.E.2d 141. However, we find that Owen's initial formulation of the question and the bulk of his brief allege there was no intelligent and knowing guilty plea and we consider this as his only argument.

the State asserts that Owen could have appealed the prior denial, but that he did not. Therefore, the State urges the trial court was correct in denying relief on the basis of waiver.

Initially, we find the State's formulation of waiver under P.C.R. 1, Sec. 8 is essentially correct. *See, McKinley* v. *State* (1975), 163 Ind. App. 605, 325 N.E.2d 470, and cases cited. However, before deciding this issue we must consider additional facts and other sections of P.C.R. 1.

P.C.R. 1, Sec. 2, states that

"A proceeding under this rule is commenced by filing three (3) copies of a verified petition with the clerk of the court in which the conviction took place. No deposit or filing fee shall be required."

Further, Sec. 3 provides that

"The petition shall be made under oath and the petitioner shall verify the correctness of the petition, the authenticity of all documents and exhibits attached to the petition, and the fact that he has included every ground for relief under Sec. 1 known to the petitioner."

We also note the following testimony by Owen given at the hearing on the second petition:

"Q. Mr. Owen, are you familiar with a Petition for Post Conviction Relief that was filed in October of 1971?

A. I know that it was filed.

Q. Now would you please tell the Court how that Petition for Post Conviction Relief, with your name on it, came to be filed?

A. At the prison they have a writ room, which inmates work in, and one of the inmates that was working at the writ room at that time, approached me and asked me to explain to him about my case, which I did. Actually that's all I know, except that I got a letter about two months later from the Court saying that the Petition for Post Conviction had been denied.

Q. What did you do at that time?

A. I wrote to the Public Defender, because in the Petition it said that a Public Defender had been appointed.

Q. Now, prior to receiving the notice of denial, did you know that a petition on your behalf had been filed?

A. No, I didn't.

Q. And did you sign or verify that petition that had been filed?

A. No, I hadn't."

Finally, we consider the following finding of fact which was made in denying the first post-conviction petition:

"6. That the Petition for Post-Conviction Relief is not made under oath, the correctness is not verified and the Petition and copies are unsigned and not dated, and do not comply with the provisions of P C R 1, Section 3 of the Indiana Rules of Procedure for Post-Conviction Remedies."

The above facts make it clear that although both Owen and the trial court acknowledge that the first petition was not verified, the matters contained therein were disposed of on their merits. We must now decide whether this action was correct, and thus whether Owen has waived his present allegations.

In light of the proscriptive effect of P.C.R. 1, Sec. 8, and the additional facts set forth above, we conclude that the trial court should not have reached the merits of the first post-conviction petition. It follows, therefore, that the denial of the petition, which we find fatally defective for lack of verification, could not operate as a waiver of the question presently before us.

Section 8, set out above, requires that all grounds for relief be set out in the first petition or be waived. Further, each petition contains a statement that the petitioner has reviewed the petition and that all grounds for relief are stated therein. This statement has the effect of finally closing the door to post-conviction remedies by such a procedure, and, rightfully, there is a requirement that the petitioner sign the petition and have it notarized as evidence that he has reviewed all of the contents *and* the waiver statement.

We believe that no undue burden is cast upon the trial court to ascertain whether a petition has been properly verified. In cases where the petition is not properly completed,

the trial court should return the petition for verification. By such a procedure, trial courts will be assured that they are considering all of a petitioner's allegations, and the petitioner will be denied the issue of lack of verification if he appeals a trial court's adverse decision. We do not consider the requirement of verification a mere technicality, and we believe that insistence on such a requirement implements the finality that P.C.R. 1, Sec. 8 was intended to embody.

We thus move to a consideration of Owen's second petition—actually, his first properly filed petition—and the single argument therein. We note that Owen. complied with the verification requirement in the present petition, and thereby swears that no other grounds of relief exist.

## II.

The State's second argument is that Owen cannot now repudiate or attack the plea bargain which was obtained.

Whatever the merit of the State's position, we do not believe that such an argument squarely meets the issue here involved. The fact that a lesser crime was exchanged for a greater one does not preclude the defendant from attacking such a bargain where he alleges that he was not adequately advised as to the consequences of such a bargain. We are here confronted with a question of constitutional dimensions. The State must show not only that the defendant has accepted the deal offered, but that the deal was accepted with the knowledge that such acceptance means there will be no trial, no jury and no questioning of witnesses.

The fact that the defendant receives benefit as a result of the plea bargain in terms of a reduction of sentence does not preclude a consideration of the question of whether such a benefit was knowingly accepted as part of a bargain (or exchange) which involves the waiver of several constitutional rights.

## III.

The pertinent parts of the arraignment here challenged disclose the following:

"Q. Richard L. Owen, do you have any attorney representing you?
A. Yes sir.

* * *

Q. Richard L. Owen and Steven Scott, have you had the opportunity to consult with Mr. Dugan concerning the charge of theft which has been filed in this matter?
A. Yes, Your Honor.
A. Yes, Your Honor.
Q. And do you fully understand the charge, each of you?
A. Yes, Your Honor.
A. Yes, Your Honor.
Q. Do you have a copy of the affidavit?
A. Yes.
A. Yes.
Q. Do each of you understand the penalty that is involved with regard to this charge?
A. Yes, Your Honor.
Q. Each of you say yes, is that correct?
A. Yes.
A. Yes.
Q. Richard Owen, has anyone made any promises to you or threatened you to induce you to plead either guilty or not guilty?
A. No.

* * *

Q. If you plead not guilty you are entitled to have your bail set, to a hearing and trial by jury as quickly as it can be done without unreasonable or unnecessary delay. Are each of you ready to be arraigned at this time?
A. Yes, Your Honor.
A. Yes, Your Honor.

* * *

Q. Richard L. Owen are you ready to enter a plea at this time?
A. Yes, Your Honor.

Q. How do you plead, guilty or not guilty?
A. Guilty.

\* \* \*

Q. Now Richard L. Owen, you are charged in this affidavit with the crime of theft, in that you unlawfully and feloniously obtained and exerted unauthorized control over property of the Ponderosa Steak House which was currency of the value of $1,700. Is that correct?
A. Yes, Your Honor.

Q. And did you in fact commit this theft that you have just entered a plea of guilty to?
A. Yes, Your Honor.

Q. And do you understand what you are doing when you enter a plea of guilty to this charge?
A. Yes, Your Honor.

Q. You understand the consequences, that you can be sent to prison for this, is that correct?
A. Yes, Your Honor.

\* \* \*

Q. Now I want to ask Richard Owen, do you have any questions to ask concerning this?
A. No, You Honor.

\* \* \*"

Owen contends that the above record clearly demonstrates that he was not advised of his right to compulsory process and his right against self-incrimination, and that a reversal is mandated.

In its brief, the State admits that the record of the arraignment does not disclose any discussion concerning the right against self-incrimination and the right of compulsory process. However, the State focuses on what the trial court did do—namely, advise Owen he could have a jury trial, ask Owen if he knew the penalty involved, and ask whether Owen admitted the facts of the offense—and also points to an affidavit of Owen's attorney, which was prepared in August of 1974 and introduced at the hearing on the present petition. This affidavit, *inter alia,* states that the affiant advised Owen

several times as to his constitutional rights, and that the trial judge did likewise at the arraignment.

The State contends that this affidavit, in conjunction with other facts, such as Owen's failure to deny his guilt at the petition hearing, militate against a reversal of this cause.

Given the above facts and argument, the question reduces itself to whether a record which clearly does not meet established standards may be saved by an affidavit filed nearly four years later.

We are, of course, aware that post-conviction proceedings are civil in nature, and that Owen's failure to prove his allegations by a preponderance of the evidence means that he appeals a negative judgment. *Hoskins* v. *State* (1973), 261 Ind. 291, 302 N.E.2d 499. Thus, we may reverse only where the evidence is without conflict and leads to a conclusion contrary to the one reached below.

P.C.R. 1, Sec. 5 plainly provides for the use of affidavits by stating, in part, that

> "The court may receive affidavits, depositions, oral testimony, or other evidence and may at its discretion order the applicant brought before it for the hearing. The petitioner has the burden of establishing his grounds for relief by a preponderance of the evidence."

The State also cites the case of *Conley* v. *State* (1972), 259 Ind. 29, 284 N.E.2d 803, which held:

> "However, the record does contain an affidavit of petitioner's attorney at the time of his plea of guilty. This was filed in opposition to the motion to correct errors and was in the record prior to the hearing on that motion. . . .
>
> \* \* \*
>
> We find that this affidavit was properly in the record and before the trial court for consideration under Rule P.C. 1(5)."

After a consideration of Sec. 5, and numerous cases, in addition to *Conley,* we are of the opinion that in cases such

as the one at bar, affidavits are not admissible for the purpose of correcting a constitutionally defective guilty plea proceeding.

Indiana Rules of Procedure, Criminal Rule 10, provides, in pertinent part, that

"Whenever upon arraignment a plea of guilty to an indictment or affidavit charging a felony is accepted from any defendant, who on the date of arraignment or on a later day is sentenced upon said plea, the judge shall cause the court reporter to record the entire proceedings in connection with such arraignment and sentencing including questions, answers, statements made by the defendant and his attorney, if any, the prosecuting attorney and the judge, and promptly thereafter to transcribe the same in form similar to that in general use as a transcript of evidence in a trial. *When so transcribed the same shall be submitted to the judge who shall certify that it is a true and complete transcript of such proceedings and shall order the same filed as a part of the record and cause an order book entry of the filing thereof to be made by the clerk. Thereafter in any proceeding questioning the validity of such arraignment, plea of guilty or judgment rendered thereon, such transcript shall be taken and considered as the record of the proceedings transcribed therein* and upon appeal the original may be incorporated without copying as part of the record in such appeal over the certificate of the clerk or a copy of said transcript may be included in a bill of exceptions." (Our emphasis.)

This Rule was noted in *Brimhall* v. *State* (1972), 258 Ind. 153, 279 N.E.2d 556 at 564, where the court stated that a trial judge must "put on the record facts which indicate the status of the plea . . ." Then, the court quoted from *Campbell* v. *State* (1951), 229 Ind. 198, 96 N.E.2d 876, in stating that

" 'One of the reasons for the adoption of Rule 1-11 (now C.R. 10) supra by this court is to provide an unimpeachable record showing the extent of the inquiry into the facts, circumstances and conditions made by the trial court to ascertain *at the time* whether the offered plea of guilty is made freely and understandingly. *Without such record the trial court is, by its own volition, shorn of the procedural facts that might protect its judgment from attack.*' 229 Ind. at 202, 96 N.E.2d at 877." (Our emphasis.)

In discussing the effect of a similar federal rule, the *Brimhall* court cited and quoted from *McCarthy* v. *United States* (1969), 394 U.S. 459 as follows:

"The court in *McCarthy* reversed a conviction where the federal rule was not complied with holding that there is no adequate substitute for 'demonstrating *in the record at the time the plea is entered* the defendant's understanding of the nature of the charge against him.'" (Original emphasis.)

Finally, in interpreting the "constitutional dimension(s)" of *Boykin* v. *Alabama* (1969), 395 U.S. 238, our Supreme Court stated that

". . . the U.S. Supreme Court held that in order to satisfy the constitutional requirements of due process, *the record of the entry of the plea* must demonstrate a knowing and intelligent waiver by the accused of his constitutional rights. Since the *Boykin* case, presuming waiver from a silent record in a guilty plea case is impermissible." (Our emphasis.) *Brimhall* v. *State* (1972), 258 Ind. at 165, 279 N.E.2d at 564.

The above quotations support our holding that the record *of the guilty plea proceedings* must show that the court inquired as to whether the defendant knows and understands his basic constitutional rights. Our opinion is further buttressed by statements from other recent cases of our Supreme and Appellate Courts. While some of the challenges presented in the cases which follow are not precisely the same as the one in the case at bar, we feel each case discloses a real concern that the record *of the plea proceedings* evidence proper inquiries by the trial court.

In *Chandler* v. *State* (1973), 261 Ind. 161, 300 N.E.2d 877, 881, the Indiana Supreme Court discussed the purpose of C.R. 10, cited *Campbell*, and stated that

"In subsequent cases, we have repeatedly stressed that the record should affirmatively evidence that the defendant was accorded all of his constitutional rights *at that stage.* . . . We conclude that when, as here, *the record discloses that at the time the guilty plea was entered* the trial judge

did not perform his duty by determining that such plea was knowingly and voluntarily entered, or if the record fails affirmatively to show such a determination, a petitioner who claims that his counsel was ineffective and failed to advise him will not be required to prove the same by a preponderance of the evidence, as he otherwise would be, but will be entitled to withdraw the plea if he raises a reasonable doubt upon that issue." (Our emphasis.)

Finally, in a case where our Supreme Court extensively discussed the duties of the trial court in accepting a guilty plea, it was held that what was important was not *who* made the proper record, but *what* the record contained. In reaffirming its reliance on *Boykin,* the court cited the earlier case of *Brown* v. *State* (1973), 261 Ind. 50, 300 N.E.2d 83, as the proper approach to such problems, and then stated

"That interpretation requires that the trial court provide a record of the guilty plea proceeding which demonstrates that the defendant was advised of his *Boykin* rights by the trial court itself or that the defendant was otherwise aware of such guaranties.

\* \* \*

". . . We believe the essence of *that decision requires only that the record affirmatively show that defendant was advised of the Boykin rights prior to the entry of his plea.* A defendant's guilty plea is not tainted merely because the trial court fails to repeat defendant's rights for him, so long as the *record of the guilty plea proceeding* contains evidence from which the trial court may validly conclude that defendant was meaningfully informed of the specific rights enumerated in *Boykin.* Nothing we have said, however, may be interpreted as relieving the trial court of its absolute duty to decide, on the basis of evidence in the record before it, whether a defendant's plea is made voluntarily and understandingly." (First emphasis ours; second emphasis original.) *Williams* v. *State* (1975), 263 Ind. 165, 325 N.E.2d 827, 833.

The thrust of the above cases, and the implicit purpose of C.R. 10, is that each trial court must adequately demonstrate on the record *which is made when the plea is entered* that it had before it adequate grounds to conclude that the guilty plea is being given by a person who

knows his rights. Adherence to such a procedure can and will effectively foreclose attacks on the record such as we have in the case at bar.

We emphasize that we do not question the contents or truthfulness of the affidavit here involved. However, to allow such affidavits[2] to impeach the record which has been certified as containing the true proceedings of the trial court would emasculate the requirement that the judge inquire into the giving of the plea prior to accepting it, and that the record demonstrate such inquiry.

In the case at bar, the record of the guilty plea proceedings is silent as to whether Owen was informed of two of the three *Boykin* rights before he entered a plea of guilty. Thus, we cannot presume that such rights were knowingly and intelligently waived. Therefore, we find that the judgment of the trial court was contrary to law and that it must be reversed and remanded for further proceedings not inconsistent with this opinion.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 338 N.E.2d 715.

---

2. The affidavit in this case was not prepared or filed until about four (4) years after the plea proceedings.