**James Edward BARFELL, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 3–877 A 212.**

Court of Appeals of Indiana, Third District.

Dec. 20, 1979.

nated in a plea agreement, whereby Barfell agreed to plead guilty to the lesser offense of Robbery by Putting in Fear. The plea bargain was accepted by the trial court, and in February of 1975, Barfell was sentenced to the Indiana Department of Corrections for a period of not less than ten (10) nor more than twenty-five (25) years.

The following October, Barfell, proceeding *pro se,* filed a Petition for Post-Conviction Relief. The trial court denied the petition on the basis that the pleadings conclusively revealed he was not entitled to relief. In May of 1976, Barfell, this time with the assistance of fellow prisoners, filed a second Petition for Post-Conviction Relief, which was subsequently amended at the direction of a public defender. On May 20, 1977, the trial court denied this amended version of Barfell's second Petition for Post-Conviction Relief.

Barfell appeals from that decision and raises the following issues for our review:

(1) Whether the trial court erred in its conclusion that Barfell was not entitled to file a second Petition for Post-Conviction Relief?

(2) Whether the trial court's failure to advise Barfell that the State was required to prove his guilt beyond a reasonable doubt invalidates the guilty plea?

We reverse the trial court's denial of Barfell's Petition for Post-Conviction Relief on the basis that the plea of guilty was invalid.

I.

## Second Petition

Barfell maintains that the trial court erred in concluding that he was not entitled to file a second Petition for Post-Conviction Relief. That conclusion of the trial court was based on the provisions of Ind.Rules of Procedure, Post-Conviction Relief Rule 1, § 8, which reads:

"All grounds for relief available to a petitioner under this rule must be raised in his original petition. Any ground finally adjudicated on the merits or not so raised and knowingly, voluntarily and intelli-

Harriette Bailey Conn, Public Defender, Kyle M. Payne, Deputy Public Defender, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Charles D. Rodgers, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

In 1974, James Edward Barfell was charged with Committing a Felony while Armed with a Deadly Weapon. Negotiations between the State and Barfell culmi-

gently waived in the proceeding that resulted in the conviction or sentence, or in any other proceeding the petitioner has taken to secure relief, may not be the basis for a subsequent petition, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original petition."

It is Barfell's contention that his failure to verify the original petition bars the invocation of finality which PC. 1, § 8 was intended to effectuate. We agree with Barfell.

■■■ Ind.Rules of Procedure, Post-Conviction Rule 1, §§ 2 and 3 require that Petitions for Post-Conviction Relief be verified. Among those matters which a petitioner is required to acknowledge in the verification is that "he has included every ground for relief known to petitioner." PC. 1, § 3.[1] If such verification is not attached to the original petition, the trial court should return the petition for compliance with the verification requirements. *Shelor v. State* (1979), Ind., 386 N.E.2d 690, 691, relying on *Owen v. State* (1975), Ind.App., 338 N.E.2d 715, 718. Where, however, as here, the trial court adjudicates the merits of a petition which lacks the necessary verification, the petitioner is not barred from raising different grounds for relief in a subsequent petition. *Id.* The requirement of verification imposed by PC. 1, §§ 2 and 3 is designed to serve judicial economy. If properly applied, the rule eliminates both multiplicity of petitions and appeals from the original petition based on the issue of whether the verification requirements were satisfied. *Id.*

We note that the trial court concluded merely that Barfell was "not entitled" to file a second petition. The court did not, however, dispose of Barfell's second petition in a manner consistent with its erroneous interpretation of the procedural rules of postconviction relief. The court did not dismiss Barfell's petition on the basis of waiver, but it did hold a hearing on the substantive allegations contained in the petition and adjudicated those allegations. Consequently, regardless of whether the trial court's misinterpretation of the procedural rule is characterized as "error", it in no way prejudiced the rights of petitioner Barfell. At most, the erroneous conclusion of the court constituted harmless error. We thus proceed to an examination of Barfell's challenge to the trial court's disposition of the substantive claim raised in the second petition.

## II.

### Guilty Plea

■■■ At the hearing wherein Barfell pled guilty to the lesser included offense of Robbery by Putting in Fear, the trial court neglected to advise him that should he proceed to trial, the State would be required to prove his guilt "beyond a reasonable doubt." Barfell's assertion that the trial court's failure to properly advise him is predicated on concomitant grounds: (1) the statutory duty of the trial court to advise him of the standard of proof necessary to sustain a conviction, IC 1971, 35–4.1–1–3(c) (Burns Code Ed.); and (2) the constitutional dimension of the "beyond a reasonable doubt" standard of proof, *In re Winship* (1970), 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368. In short, Barfell argues that the due process significance of the right elevates it to a status equivalent to those rights[2] enumerated in *Boykin v. Alabama* (1969), 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, the advisement of which is a constitutional prerequisite to a valid guilty plea. Barfell thus maintains that the failure to advise him of the standard of proof prior to the entry and acceptance of his plea cannot constitute harmless error.

---

1. PC. 1, § 3 also requires petitioners to verify the correctness of the petition and the fact that all documents and exhibits attached to the petition are authentic.

2. In *Boykin,* the Court held that the waiver of three important federal rights could not be presumed from a silent record: (1) the privilege against compulsory self-incrimination; (2) the right to trial by jury; and (3) the right to confront one's accusers. 395 U.S. at 243, 89 S.Ct. at 1712.

IC 1971, 35–4.1–1–3, *supra*, which constitutes the statutory basis for Barfell's claim, reads in relevant part:

"The court shall not accept a plea of guilty from the defendant without first addressing the defendant and,

\* \* \* \* \* \*

"(c) Informing him that by his plea of guilty he waives his rights to a public and speedy trial by jury, to face the witnesses against him, to have compulsory process for obtaining witnesses in his favor and *to require the state to prove his guilt beyond a reasonable doubt* at a trial at which the defendant may not be compelled to testify against himself;" (Emphasis added.).

The language of the statute—"The court shall not accept a plea of guilty . . . . without first addressing the defendant and . . . ."—is *mandatory* in nature. *Turman v. State* (1979), Ind., 392 N.E.2d 483, 488. The trial court thus erred when it failed to inform Barfell of the State's standard of proof in the event he opted to proceed to trial. *Id.*

It is the State's contention, however, that the court's error was merely a "technical" one which did not prejudice the substantial rights of Barfell. Notwithstanding the meritless nature of the arguments tendered by the State in support of its contention,[3] the question whether the trial court's neglect constitutes reversible error is tenable. While Barfell was not advised at the *guilty plea hearing* that by his plea he would waive his right to require the State to prove his guilt beyond a reasonable doubt, he testified at the *post-conviction relief hearing* that he understood that right at the time he entered his plea. That understanding was professed during the following colloquy between the prosecuting attorney and Barfell:

"Q. And if the Court or Mr. Burke or myself or anybody including the public defender were to tell you that the State of Indiana has the burden beyond a reasonable doubt, do you know what that means?

"A. Uh-huh.

"Q. What does it mean?

"A. It means, you have evidence to win.

"Q. That I have enough evidence to prove the case beyond a reasonable doubt, right?

"A. Yes.

"Q. Did you understand that to be my duty if we had gone to trial in the Arm [*sic*] Robbery case?

"A. Yes.

"Q. You understood that?

"A. Uh-huh.

"Q. You knew that I had to prove my case?

"A. Uh-huh.

"Q. And since we didn't go to trial I didn't any longer have that burden, is that correct?

"A. Yes.

"Q. The burden is gone since the plea of guilty was entered to a lesser included crime?

"A. Yes.

"Q. But you understood, did you not, that if we had gone to trial that it is the Prosecutor's Office job to meet that burden of proof that it had before you could be convicted?

"A. Yes, sir."

Our disposition of Barfell's appeal thus encompasses the sub-issue of whether the record compiled at the post-conviction relief hearing can be used to rehabilitate the inadequate guilty plea record. We turn to that question.

---

**3.** The State argues in its brief that because Barfell was pleading his guilt, it was unnecessary to advise him of the State's burden of proof in the event he chose not to plead guilty. In the State's words: "[H]owever, petitioner was admitting his guilt in open court . . . . The petitioner would have been just as guilty with the admonishment as he was without it." These arguments exhibit a casual disdain for the purpose underlying both the United States Supreme Court holding in *Boykin v. Alabama* (1969), 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 and the legislature's passage of IC 1971, 35–4.1–1–3, *supra*: to insure that the trial court satisfies itself that the defendant is fully apprised of the ramifications of pleading guilty *prior to* its acceptance of the plea.

In *Boykin v. Alabama, supra,* the Supreme Court indicated that the constitutional validity of a guilty plea is to be established by the trial court on the record of that hearing wherein the plea is entered. 395 U.S. at 243–244, 89 S.Ct. at 1712. Consistent with the sequential scheme contemplated by the Court in *Boykin* —advisement of rights, then entry and acceptance of plea—our legislature, in enacting IC 1971, 35–4.1–1–3, *supra,* mandated that the trial court advise the defendant of the various substantive components detailed therein prior to accepting a plea of guilt. The language of the statute is unequivocal: "The court shall not accept a plea of guilty from the defendant without first addressing the defendant and . . . [informing him of the substantive matters contained in the statute.]" [4]

Notwithstanding these constitutional and statutory mandates that the validity of a guilty plea be established prior to its entry and acceptance, Indiana case law reveals dichotomous approaches to the question before us. In some instances, Courts have refused to implement the post-conviction record in the adjudication of a challenge to the validity of a guilty plea. *See, e. g., Avery v. State* (1976), 265 Ind. 417, 355 N.E.2d 395 (Arterburn, J., dissenting); *Norfrey v. State* (1976), Ind.App., 358 N.E.2d 202. In other instances, however, Courts have used the post-conviction record in the determination of the validity or invalidity of a plea of guilt. *See, e. g., Neeley v. State* (1978), Ind., 382 N.E.2d 714 (Prentice

and DeBruler, JJ., dissenting); *Williams v. State* (1975), 263 Ind. 165, 325 N.E.2d 827 (DeBruler, J., dissenting).

In *Williams v. State, supra,* the record of the guilty plea hearing did not reveal any indication that the trial court had advised the defendant of his *Boykin* rights prior to the entry of his plea. Incorporated into the record of that hearing, however, was a form statement which had been prepared by the prosecutor. Defendant Williams had signed the form, which declared his understanding of seven enumerated constitutional rights, among which were the three *Boykin* rights. On appeal from the denial of Williams' petition for post-conviction relief, the Supreme Court relied in part on the record compiled at the post-conviction relief hearing to support its decision that Williams' plea had been intelligently and voluntarily entered. *Id.* 325 N.E.2d at 835.

The Court's reliance in *Williams* on the post-conviction relief record was explained in *Avery v. State* (1976), 265 Ind. 417, 355 N.E.2d 395. In *Avery,* the trial court had accepted the defendant's guilty plea without first advising him of his right to confront his accusers and his right against compulsory self-incrimination. Defendant Avery's subsequent petition for post-conviction relief was denied by the trial court on the basis of the evidence presented at the hearing conducted on his petition for post-conviction relief. On appeal from that denial, the Supreme Court rejected the trial court's usage of the post-conviction relief

---

**4.** The statute reads in its entirety:

"35–4.1–1–3 [9–1204]. Plea of guilty—Defendant advised by court.—The court shall not accept a plea of guilty from the defendant without first addressing the defendant and

"(a) Determining that he understands the nature of the charge against him;

"(b) Informing him that by his plea of guilty he is admitting the truth of all facts alleged in the indictment or information or to an offense included thereunder and that upon entry of such plea the court shall proceed with judgment and sentence;

"(c) Informing him that by his plea of guilty he waives his rights to a public and speedy trial by jury, to face the witnesses against him, to have compulsory process for obtaining witnesses in his favor and to re-

quire the state to prove his guilt beyond a reasonable doubt at a trial at which the defendant may not be compelled to testify against himself;

"(d) Informing him of the maximum possible sentence and minimum sentence for the offense charged and of any possible increased sentence by reason of the fact of a prior conviction or convictions, and of any possibility of the imposition of consecutive sentences;

"(e) Informing him that the court is not a party to any agreement which may have been made between the prosecutor and the defense and is not bound thereby. [IC 35–4.1–1–3, as added by Acts 1973, P.L. 325, § 4, p. 1750.]"

record to vindicate the inadequate record compiled at the guilty plea hearing:

"The judge in the post-conviction proceeding before us now for review, relied upon *Williams* in arriving at his conclusion that he could conduct a hearing into the issue of voluntariness after having been presented with a constitutionally deficient plea proceeding record by petition. Such reliance was misplaced. In *Williams*, the record of the guilty plea proceeding incorporated a written statement of the accused in which he affirmed that he had been advised of more than seven federal constitutional rights, specified in the statement, including those found omitted from the record of the proceedings being considered in this appeal. The Court concluded:

'A defendant's guilty plea is not tainted merely because the trial court fails to repeat defendant's rights for him, so long as the *record of the guilty plea proceeding* contains evidence from which the trial court may validly conclude that defendant was meaningfully informed of the specific rights enumerated in *Boykin*.' (Original emphasis.) 325 N.E.2d at 833.

"The record of the guilty plea proceedings before us now, *contains nothing from which one might conclude that appellant was informed* of the right to confront witnesses and to have the benefit of the privilege against compulsory self-incrimination, and as required by the Fifth and Sixth Amendments to the United States Constitution, made applicable to the State of Indiana through the due process clause of the Fourteenth Amendment, upon such record appellant is entitled to withdraw his guilty pleas and to plead anew." (Emphasis added.).

*Id.*, 355 N.E.2d at 397. The Court thus reconciled its refusal to consider the post-conviction relief record in *Avery* with its previous use of that record in *Williams* on the basis of a distinguishing fact: In *Williams*, the record of the guilty plea hearing was not silent regarding the several rights at issue, whereas in *Avery*, the guilty plea record was void of any reference to the particular rights in question.

The use of the record compiled at a post-conviction relief hearing to rehabilitate an inadequate guilty plea record is thus justified only when the record of the guilty plea hearing contains some indication that the defendant was informed of the particular right at issue. The usage of post-conviction hearing records in this circumstance serves to accommodate the well-founded rule that the sufficiency of a particular advisement of rights is not dependent upon whether the defendant is informed of the right in its exact constitutional or statutory terms; rather, its validity hinges on whether the words used were sufficient to convey the required meaning. *Neeley v. State, supra*, at 717–718, *relying on Coyote v. United States* (10th Cir. 1967), 380 F.2d 305, 308, *cert. denied* 389 U.S. 992, 88 S.Ct. 489, 19 L.Ed.2d 484; *Jones v. State* (1969), 253 Ind. 235, 252 N.E.2d 572. The rule and its rationale was explained in *Coyote v. United States, supra*, where the Court analyzed the analogous question of what words were sufficient to satisfy the advisement of rights required by *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694:

"Surely *Miranda* is not a ritual of words to be recited by rote according to didactic niceties. What *Miranda* does require is meaningful advice to the unlettered and unlearned in language which he can comprehend and on which he can knowingly act. We will not indulge semantical debates between counsel over the particular words used to inform an individual of his rights. The crucial test is whether the words in the context used, considering the age, background and intelligence of the individual being interrogated, impart a clear, understandable warning of all of his rights.

It is, of course, always open to an accused to subjectively deny that he understood the precautionary warning and advice with respect to the assistance of counsel. When the issue is raised in an admissibility hearing, i. e. *see McHenry v. United States*, 10 Cir., 308 F.2d 700, it is for the court to objectively determine

whether in the circumstances of the case the words used were sufficient to convey the required warning."

380 F.2d at 308, quoted with approval in *Neeley v. State, supra,* at 718, and *Jones v. State, supra,* 252 N.E.2d at 576. Similarly, the validity or invalidity of the advisement of rights mandated in *Boykin* and IC 1971, 35–4.1–1–3 is not dependent upon a ritualistic recitation of particular words. *Id.* Consequently, where the language contained in the guilty plea record provides *some* indication that the defendant was informed of the right in question, the post-conviction hearing may be examined for the limited purpose of establishing whether the words used by the trial court were sufficient to inform the defendant of that right. *Neeley v. State, supra;* [5] *Avery v. State, supra.*

The wholly silent [6] guilty plea record, however, compels a different approach. Where there has been no indication that the defendant was advised of a particular right at the hearing wherein the plea was entered, our Courts have refused to implement the post-conviction relief record for the purpose of determining the validity or invalidity of the plea. *Avery v. State, supra; Norfrey v. State, supra. That refusal has been invoked in spite of evidence compiled at the post-conviction hearing that clearly revealed that a defendant was cognizant of the right omitted from the trial court's advisement at the guilty plea hearing.* In *Norfrey,* for example, as in the case-at-bar, the trial court had only partial-

ly complied with the mandates of IC 1971, 35–4.1–1–3, *supra,* prior to its acceptance of the defendant's guilty plea. On appeal from the denial of *Norfrey's* petition for post-conviction relief, Judge Robertson stated for the unanimous Court:

"*We are aware that in the course of the PCR hearing two exhibits were accepted into evidence which made it abundantly clear that Norfrey did knowingly and intelligently enter his guilty plea.* Those exhibits were statements dated September 18, 1973 and September 20, 1973, the former written by Norfrey's attorney and the latter in Norfrey's own hand and both signed by Norfrey, specifying the various rights Norfrey was about to waive by his guilty plea. Those statements, taken together with the inquiries by the trial court at the September 21, 1973, hearing, comprise essentially the sum of the information that the statute requires the trial court to ascertain. *The record, though, does not disclose that the trial court was cognizant of the existence of those statements at the time it accepted the guilty plea. . . .*"
(Emphasis added.).

358 N.E.2d at 203. The Court thus reversed the trial court's denial of Norfrey's petition for post-conviction relief on the basis that the guilty plea had not been accepted in accordance with the dictates of IC 1971, 35–4.1–1–3, *supra. Id.* at 204.

An analogous refusal to consider evidence from outside a silent guilty plea record oc-

---

5. In *Neeley,* the defendant was not advised at the guilty plea hearing of his right to confront his accusers. On appeal from the trial court's denial of his petition for post-conviction relief, the Supreme Court utilized defendant's testimony at the post-conviction relief hearing to affirm the trial court. This usage was apparently predicated upon the fact that at the guilty plea hearing, Defendant had been advised of his right to compulsory process. Implicit to the Court's opinion is the proposition that inasmuch as the right to confront accusers and to compulsory process are concomitant aspects of the Sixth Amendment right of confrontation, the advisement of the former is an indication that the trial court discharged its constitutional and statutory duty to inform the defendant of the latter.

6. We emphasize that a record is "silent" if it does not indicate a separate and individual admonishment as to each of defendant's rights. In other words, a record is regarded as "silent" for purposes of the rule if there is no indication that the defendant was informed of the particular right in question—even though the other constitutional and statutory matters were fully explained. *Bonner v. State* (1973), 156 Ind. App. 513, 297 N.E.2d 867, 873, *relying on People v. Jaworski* (1972), 387 Mich. 21, 194 N.W.2d 868, 871; *In re Tahl* (1969), 1 Cal.3d 122, 81 Cal.Rptr. 577, 460 P.2d 449, *cert. denied* 389 U.S. 911, 90 S.Ct. 1708, 26 L.Ed.2d 72; *Nachtigall v. Erickson* (1970), 85 S.D. 122, 178 N.W.2d 198; *State ex rel. Jackson v. Henderson* (1971), 260 La. 90, 255 So.2d 85.

curred in *Maleck v. State* (1976), 265 Ind. 604, 358 N.E.2d 116 (Arterburn, Givan, JJ., dissenting), *rev'g* Ind.App., 352 N.E.2d 540. There, the Court confronted the question whether an adequate advisement of rights at a *previous* hearing rendered valid the acceptance of a guilty plea at a hearing where no advisement occurred:

> "Whether an adequate advisement of rights at a previous hearing renders the acceptance of a subsequent guilty plea proper, has not been considered by this Court. As pointed out by the public defender's brief, specific language of our cases not dealing with this particular question tend to support the view that it does not. *Williams, supra; Conley v. State,* (1972) 259 Ind. 29, 284 N.E.2d 803; *Brimhall v. State,* (1972) 258 Ind. 153, 279 N.E.2d 557. In any event, we now hold it necessary for the trial judge to fully advise a defendant of his rights at the time a guilty plea is tendered, or have a record before him which demonstrates a full advisement. . . ."

*Id.* 358 N.E.2d at 117–118. *Accord, Beard v. State* (1978), Ind.App., 375 N.E.2d 270 (advisement of rights to co-defendant in presence of defendant at previous hearing held insufficient to validate the trial court's acceptance of plea at subsequent hearing); *Collins v. State* (1979), Ind.App., 394 N.E.2d 211 (transfer pending) (court refused to consider record compiled at subsequent sentencing hearing).

The refusal of our Courts to cure a silent guilty plea record by reference to matters outside its confines rests on a foundation of various policy considerations. At the heart of those considerations is the momentous consequences which a guilty plea entails: by entering the plea, the defendant waives his various constitutional and statutory rights and exposes himself to the sentencing powers of the trial court. The punishment exacted subsequent to the court's acceptance of the plea oftentimes involves an extended deprivation of liberty. The guilty plea is thus a "grave and solemn act" to be accepted by the trial court "only with care and discernment." *Brady v. United States* (1970), 397 U.S. 742, 748, 90 S.Ct. 1463, 1468,

25 L.Ed.2d 747. *See also, Stowers v. State* (1977), Ind., 363 N.E.2d 978, 982. As was stated in *Boykin v. Alabama, supra*:

> "What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence. When the judge discharges that function, he leaves a record adequate for any review that may be later sought. (*Garner v. Louisiana,* 368 U.S. 157, 173, 82 S.Ct. 248, 256, 7 L.Ed.2d 207; *Specht v. Patterson,* 386 U.S. 605, 610, 87 S.Ct. 1209, 1212, 18 L.Ed.2d 326), and forestalls the spinoff of collateral proceedings that seek to probe murky memories." (Footnotes omitted.).

395 U.S. at 243–244, 89 S.Ct. at 1712–1714.

The Court in *Boykin* thus intended that the admonishment of rights serve two equally significant purposes: (1) to insure that the defendant is fully apprised of the consequences of his plea, and (2) to require the trial court to satisfy itself that the defendant is in fact acting knowingly and intelligently prior to accepting the plea. Both purposes of the admonishment requirement were reiterated by Justice Hunter in *Maleck v. State, supra*:

> "Only when a defendant is seriously considering entering a guilty plea will the advisement be meaningful to him and for the trial judge in determining an intentional and intelligent waiver of known rights. . . ."

265 Ind. at 606, 358 N.E.2d at 118. The advisement requirement is thus designed not only to inform the defendant of the rights and consequences of his plea, but also to insure that the trial court scrutinize the defendant's act to determine that it is in fact intentionally and intelligently executed. The gravity of the consequences attendant to the plea require that the trial court, in its role as impartial and detached arbiter, discharge that function. *Brady v. United States, supra; Boykin v. Alabama, supra; Maleck v. State, supra; Williams v.*

*State, supra; Brimhall v. State* (1972), 258
Ind. 153, 279 N.E.2d 557, 563.

 The extreme regard our Courts
hold for the trial court's duty to satisfy
itself as to the validity of a plea is exempli-
fied by the Court's decision in *Pursifull v.
State* (1973), 157 Ind.App. 560, 301 N.E.2d
226. There, the record of the guilty plea
hearing revealed the following colloquy be-
tween the Court and defendant Pursifull:

"Q. Did I explain your constitutional
rights to you when you were here
before?

"A. Yes, sir, I understood my rights per-
fectly."

157 Ind.App. at 567, 301 N.E.2d at 230.
Pursifull's post-conviction relief petition
challenging the validity of his guilty plea
was denied by the trial court. On appeal,
the Court reversed that denial on the basis
that the record did not reflect that Pursifull
had in fact been informed of his *Boykin*
rights. For the unanimous Court, Judge
Lybrook observed:

"Due to the seriousness of a guilty
plea, a trial judge should take ample pre-
caution to see that a defendant is fully
and explicitly advised of his constitution-
al rights. He should avoid being side-
tracked by a loquacious defendant who
professes to understand his rights per-
fectly without having been informed of
them."

*Id.*

In addition to insuring that the trial
court ascertains that the defendant is act-
ing knowingly and intelligently when he
enters his plea, the requirement that a full
advisement of rights and consequences ap-
pear on the record of the hearing wherein
the plea is entered effectuates sound judi-
cial policy. Inadequate guilty plea records
result in post-conviction proceedings where-
in trial and appellate courts, hampered by
the "murky memories" eschewed in *Boykin*,
are required to make subjective determina-
tions of the defendant's "understanding" at
the time when he entered the plea. An

adequate advisement of rights at the hear-
ing wherein the plea is entered, on the
other hand, provides a sound basis for re-
view and dispenses with the need for dubi-
ous after-the-fact determinations. In turn,
the adequate record serves to foreclose the
initiation of these needless post-conviction
proceedings which clog our already crowded
trial and appellate court dockets. *See gen-
erally, Boykin v. Alabama, supra; Williams
v. State, supra; Collins v. State, supra;
Ewing v. State* (1976), Ind.App., 358 N.E.2d
204.

These various purposes are achieved only
when the trial court strictly complies with
the requirements of a valid guilty plea.
Towards that end, our Supreme Court
recently declared that literal compliance
with the unequivocal and mandatory lan-
guage of IC 1971, 35–4.1–1–3, *supra*, is re-
quired of our trial courts.[7] That pro-
nouncement came in *Turman v. State*
(1979), Ind., 392 N.E.2d 483, (Givan, C. J.,
and Pivarnik, J., dissenting), where Justice
Hunter stated:

"In considering the voluntariness of a
guilty plea we start with the standard
that the record of the guilty plea proceed-
ing must demonstrate that the defendant
was advised of his constitutional rights
and knowingly and voluntarily waived
them. *Boykin v. Alabama*, (1969) 395
U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274.
Our Court has consistently held that the
record must provide a sufficient basis for
the conclusion that the defendant was
meaningfully informed of the specific
rights enumerated in *Boykin*. *Laird v.
State* (1979), Ind., 385 N.E.2d 452; *Wil-
liams v. State*, (1975) 263 Ind. 165, 325
N.E.2d 827. We now hold that the record
must also provide a sufficient basis for
the conclusion that the defendant was
meaningfully informed of the rights and
law detailed in West's Ann.Ind.Code
§ 35–4.1–1–3 (1978).

*Id.* at 484, 485.

The record of the proceedings wherein
Barfell's guilty plea was entered and ac-

7. In his dissenting opinion in *Neeley v. State,
supra,* in which Justice DeBruler concurred,
Justice Prentice argued that compliance with

IC 1971, 35–4.1–1–3, *supra*, was a "jurisdiction-
al prerequisite" to the acceptance of a guilty
plea. 382 N.E.2d at 719.

cepted reveals absolutely no basis for the conclusion that he was "meaningfully informed" of the State's standard of proof in the event he opted to proceed to trial. The record is void of any reference by the trial court to the reasonable-doubt standard; there is no indication that the prosecuting attorney or defense counsel, either by a written plea agreement or otherwise, apprised Barfell of the standard. In the face of this *wholly silent* guilty plea record, we cannot implement testimony compiled at Barfell's post-conviction relief hearing to validate the court's acceptance of his plea. *Avery v. State, supra; Norfrey v. State, supra.*

▮ Even if it was permissible for this Court to use Barfell's post-conviction testimony to supplement the guilty plea record, we would still find his plea invalid. From the transcript of the post-conviction proceeding wherein he professed his "understanding"[8] of the reasonable-doubt standard, we can only speculate as to the source of his knowledge. Perhaps he garnered his understanding from television. Perhaps he had previous legal training. Perhaps he learned of the standard from previous appearances in court. To hold valid his guilty plea on the basis that he was somehow aware of the reasonable-doubt standard would clearly contravene the Supreme Court's holding and rationale in *Maleck v. State, supra. See also, Pursifull v. State, supra.* In short, it is not enough that a defendant profess to understand his rights; rather, he must be meaningfully informed of them. *Turman v. State, supra.*

▮ It is true, of course, that petitioner Barfell had the burden of proof at his post-conviction relief proceeding to establish his grounds for relief by a preponderance of the evidence. Ind. R.P.C. 1, § 5; *Turman v. State, supra.* Implicit to the decisions in *Maleck v. State, supra; Avery v. State, supra; Collins v. State, supra; Beard v. State, supra*; and *Norfrey v. State, supra,* wherein our Courts refused to consider evidence extraneous to the guilty plea record, is the proposition that when a silent guilty plea record is presented in conjunction with a petition for post-conviction relief, the petitioner has satisfied his burden and is entitled to relief.[9] *Accord, Turman v. State, supra.* Barfell presented the trial court with a silent guilty plea record; accordingly, the trial court committed reversible error when it denied his petition for post-conviction relief.

Inasmuch as our conclusion is predicated on IC 1971, 35–4.1–1–3, *supra,* Indiana case law heretofore discussed, and the sound policy considerations underlying those authorities, we do not directly address Barfell's assertion that the due process significance of the reasonable-doubt standard elevates it to a status equivalent to those rights enumerated in *Boykin v. Alabama, supra.*[10] Our Supreme Court's decision in *Turman v. State, supra,* which was handed down subsequent to the initiation of this appeal, obviates the need for us to address that question.

At the same time, however, we are persuaded in the propriety of our conclusion by the central role that the constitutionally-re-

8. Barfell's own explanation of his understanding of the reasonable-doubt standard—"It means, you [the State] have enough evidence to win."—can hardly be characterized as a "meaningful" understanding of his right. His statement indicates only that he realized the existence of the standard, not that he understood the extent of proof necessary to sustain a conviction. While it would be naive to suggest that a defendant will fully appreciate the nature and significance of the right once it is recited to them at the guilty plea proceeding, the fact that the advisement occurs may provide the catalyst for a more complete explanation and understanding of the standard. That more detailed description of the standard might be initiated by either the defendant or the trial judge, who, with care and discernment, perceives that the defendant does not appear to fully grasp the nature of the reasonable-doubt requirement.

9. Also implicit in *Turman* and those decisions where extraneous evidence was refused consideration is the proposition that relief will be granted without an actual showing of prejudice to the substantial rights of defendant, as required by IC 1971, 35–1–47–9 (Burns Code Ed.).

10. *See* fn. 2, *supra,* for an enumeration of those rights included within the scope of the *Boykin* decision.

quired reasonable-doubt standard plays in our administration of criminal justice. Writing for the majority in *In re Winship* (1970), 397 U.S. 362, 90 S.Ct. 1068, 25 L.Ed.2d 368 (Black, J., dissenting), Justice Brennan discussed the importance of the requirement that a conviction cannot be sustained absent proof beyond a reasonable doubt:

"The reasonable-doubt standard plays a vital role in the American scheme of criminal procedure. It is a prime instrument for reducing the risk of convictions resting on factual error. The standard provides concrete substance for the presumption of innocence—that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law.' *Coffin v. United States, supra*, 156 U.S., [432] at 453, 15 S.Ct., [394] at 403, 39 L.Ed. 481. As the dissenters in the New York Court of Appeals observed, and we agree, 'a person accused of a crime * * * would be at a severe disadvantage, a disadvantage amounting to a lack of fundamental fairness, if he could be adjudged guilty and imprisoned for years on the strength of the same evidence as would suffice in a civil case.' [*W. v. Family Court*,] 24 N.Y.2d, [196] at 205, 299 N.Y. S.2d, [414] at 422, 247 N.E.2d, [253] at 259.

"The requirement of proof beyond a reasonable doubt has this vital role in our criminal procedure for cogent reasons. The accused during a criminal prosecution has at stake interest of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction. . . ."

\* \* \* \* \* \*

"As we said in *Speiser v. Randall, supra,* 357 U.S., [513] at 525–526, 78 S.Ct., [1332] at 1342, 2 L.Ed.2d 1460: 'There is always in litigation a margin of error, representing error in factfinding, which both parties must take into account. Where one party has at stake an interest of transcending value—as a criminal defendant his liberty—this margin of error is reduced as to him by the process of placing on the other party the burden of * * * persuading the factfinder at the conclusion of the trial of his guilt beyond a reasonable doubt. Due process commands that no man shall lose his liberty unless the Government has borne the burden of * * * convincing the factfinder of his guilt.' To this end, the reasonable-doubt standard is indispensable, for it 'impresses on the trier of fact the necessity of reaching a subjective state of certitude of the facts in issue.' Dorsen & Reznick, In Re Gault and the Future of Juvenile Law, 1 Family Law Quarterly, No. 4, pp. 1, 26 (1967)"

397 U.S. at 363–364, 90 S.Ct. at 1072. The Court noted that despite the importance of the reasonable-doubt standard of proof in our criminal justice system, some uncertainty existed regarding whether the standard was constitutionally required. For the majority, Justice Brennan declared unequivocally:

"Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."

*Id.*[11]

The significance of the reasonable-doubt standard to the entry and acceptance of a

---

11. We note that *In re Winship*, wherein the Court recognized the constitutional dimension of the reasonable-doubt standard for the first time, was decided one year after *Boykin v. Alabama, supra*. In light of the significance the Court attached to the reasonable-doubt standard in *Winship*, it is not implausible that had the two cases been decided in converse

order, the standard of proof would have been included amongst those constitutional rights enumerated in *Boykin*. Additional support for this proposition can be found in the Supreme Court's definition of a constitutionally valid plea in *North Carolina v. Alford* (1970), 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (one which "represents a voluntary and intelli-

valid guilty plea was recently addressed by the Indiana Supreme Court in *Shelor v. State* (1979), Ind., 386 N.E.2d 690. In *Shelor*, the trial court had failed to advise the defendant at the guilty plea hearing of various rights enumerated in subsection "c" of IC 1971, 35–4.1–1–3, *supra*: (1) The right to confront accusers; (2) the privilege against self-incrimination; (3) *the requirement that the State prove guilt beyond a reasonable doubt*; (4) the right to compulsory process; and (5) the right to a public and speedy trial. The Court collectively characterized these components of IC 1971, 35–4.1–1–3(c), *supra*, as "vital rights", the "knowledge of which is essential to an intelligent, knowing, and voluntary guilty plea." *Id.* at 692. Adhering to the mandates of *Boykin* and its Indiana progeny,[12] the Court stated that a waiver of these "vital rights" could not be presumed from a silent record; accordingly, the Court granted Shelor's petition for post-conviction relief, vacating his invalid guilty plea.

This Court accorded a similar respect for the reasonable-doubt standard in *Garcia v. State* (1975), 164 Ind.App. 92, 326 N.E.2d 822. In *Garcia*, the record of the guilty plea proceeding revealed no indication that the defendant had been advised of his right to confront and examine the witnesses against him, nor that the State was required to prove his guilt beyond a reasonable doubt if the case proceeded to trial. We there reversed the trial court's denial of defendant's motion to withdraw his guilty plea, characterizing the rights at issue as "substantial rights." *Id.* 326 N.E.2d at 824. *Accord, In re Guilty Plea Cases* (1975), 395 Mich. 96, 235 N.W.2d 132, *cert. denied*, 429 U.S. 1108, 97 S.Ct. 1142, 51 L.Ed.2d 561.[13]

The characterization of the reasonable-doubt standard as a "vital" and "substantial" right is wholly consistent with the significance the United States Supreme Court attributed to the right in *In re Winship, supra*. Similarly, the proposition that knowledge and understanding of the reasonable-doubt standard is a prerequisite to an intelligent and voluntary plea of guilt accords with the definition of a constitutionally valid plea: one which "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford* (1970), 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162. In order to intelligently forego the option of pleading not guilty and proceeding to trial, the defendant must be informed of the standard so that he or she can gauge the State's evidence and assess the concomitant likelihood of a jury's conviction or acquittal. To insure an intelligent and voluntary plea, it is incumbent upon trial courts to adhere to the literal mandate of IC 1971, 35–4.1–1–3(c), *supra*, and insure that the defendant is meaningfully informed of the reasonable-doubt standard of proof prior to accepting a plea of guilt.

The judgment of the trial court is reversed and this cause is remanded to the

gent choice among the alternative courses of action open to the defendant"). We note that *Alford* was also decided subsequent to *Boykin*. In *Shelor v. State, infra*, our Supreme Court characterized the reasonable-doubt standard as a "vital right", the "knowledge of which is essential to an intelligent, knowing, and voluntary guilty plea." *Accord, In re Guilty Plea Cases* (1975), 395 Mich. 96, 235 N.W.2d 132, *cert. denied*, 429 U.S. 1108, 97 S.Ct. 1142, 51 L.Ed.2d 561. *See* fn. 12, *infra*.

12. *Williams v. State* (1975), 263 Ind. 165, 325 N.E.2d 827; *Brimhall v. State* (1972), 258 Ind. 153, 279 N.E.2d 557; *Bonner v. State* (1973), 156 Ind.App. 513, 297 N.E.2d 867.

13. In *In re Guilty Plea Cases, supra*, the Michigan Supreme Court addressed a variety of questions regarding the advisement of rights due a defendant at a guilty plea hearing. Among the twenty-four challenges to guilty pleas adjudicated there, only one of the judgments of conviction was reversed. In that case, referred to by the Court as "Howell", the trial court neglected to inform the defendant of the presumption of innocence accorded him during a trial. The Court stated: "That right is at the core of our criminal process and fundamental to defendant's understanding of a trial." *Id.* 235 N.W.2d at 143. As discussed in *In re Winship, supra*, the reasonable-doubt standard and the presumption of innocence are inextricably intertwined; the former provides "concrete substance" for the effectuation of the latter. *In re Winship, supra*.

trial court with instructions to vacate Barfell's guilty plea, reinstate his plea of not guilty, and set the matter for trial.

GARRARD, P. J., concurs.

HOFFMAN, J., dissents with opinion.

HOFFMAN, Judge, dissenting.

I am unable to agree with the result reached by the majority opinion in this case.

Pursuant to a plea agreement, Barfell pled guilty to the offense of robbery and was sentenced accordingly. Eight months later he filed a *pro-se* petition for post-conviction relief which was denied on the ground that the pleadings conclusively showed that he was entitled to no relief.

Subsequently, Barfell prepared a second petition for post-conviction relief with the aid of fellow prisoners. That petition, which was amended after filing by a public defender, was denied as well.

Barfell now appeals, arguing that the court below erred when it concluded that he was not entitled to file a second petition for post-conviction relief and when it found that his plea of guilty was voluntarily, intelligently and knowingly made.

Barfell contends that he was not barred from filing a second petition, despite the prohibition contained in Ind.Rules of Procedure, Post-Conviction Rule 1, § 8, because his first petition was not properly verified.

Under the rule announced in *Owen v. State* (1975), Ind.App., 338 N.E.2d 715, Barfell's contention is clearly correct. However, the fact that the court below erroneously reached a contrary conclusion is of no moment. The record of the proceeding below shows that the court did not dismiss Barfell's petition; rather, the court held a hearing and determined the merits of the petition.

Thus, I agree that the error committed was harmless.

Barfell's second contention is that the court below erred when it failed to vacate his guilty plea. He maintains that his plea was not made voluntarily, knowingly, and intelligently because he was not informed, as required by statute, of his right to require the State to prove his guilt beyond a reasonable doubt. *See*: IC 1971, 35–4.1–1–3(c) (Burns Code Ed.).

He further relies on *Boykin v. Alabama* (1969), 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, for the proposition that, as a matter of federal constitutional law, the failure to inform an accused of certain constitutional rights renders his or her guilty plea involuntary. Thus, Barfell argues, failure to so inform the accused constitutes "fundamental error" requiring reversal of any conviction based on such a plea.

Although IC 1971, 35–4.1–1–3, *supra,* obligated the court to inform Barfell of his right to require the State to prove his guilt beyond a reasonable doubt, the rule in *Boykin, supra,* did *not* require it to do so. The three specific constitutional rights of which an accused must be informed under the *Boykin* decision are: (1) the privilege against compulsory self-incrimination, (2) the right to trial by jury, and (3) the right to confront one's accusers. *Boykin v. Alabama, supra,* 395 U.S. at 243, 89 S.Ct. 1709. Thus, the failure to advise complained of here does not rise to the level of constitutional error under *Boykin.* Consequently, Barfell must show that the error committed at the guilty plea proceeding was prejudicial in order to secure a reversal. *Ewing v. State* (1976), Ind.App., 358 N.E.2d 204, at 206–207.

The plain purpose of IC 1971, 35–4.1–1–3, *supra,* is to insure that an accused is made aware of particular matters before he or she enters a plea of guilty. *Ewing, supra,* 358 N.E.2d at 207. In the instant case the record shows that Barfell *was* aware of his right to require the State to prove his guilt beyond a reasonable doubt. His testimony at the post-conviction proceeding clearly shows that he knew his plea of guilty would relieve the State of its burden of proof.[1]

---

1. At the post-conviction proceeding the prosecuting attorney questioned Barfell as follows:

"Q And if the Court or Mr. Burke or myself or anybody including the public defender

Under these circumstances the purpose of the statute was served. Since Barfell was, by his own admission, aware of the right of which he now claims he should have been advised, the court's omission of the formality of reciting an advisement of that right was in no way prejudicial to his substantial rights and was not reversible error.

I would affirm the judgment below.

were to tell you that the State of Indiana has the burden beyond a reasonable doubt, do you know what that means?
A Uh-huh.
Q What does it mean?
A It means, you have evidence to win.
Q That I have enough evidence to prove the case beyond a reasonable doubt, right?
A Yes.
Q Did you understand that to be my duty if we had gone to trial in the Arm Robbery case?
A Yes.
Q You understood that?

A Uh-huh.
Q You knew that I had to prove my case?
A Uh-huh.
Q And since we didn't go to trial I didn't any longer have that burden, is that correct?
A Yes.
Q The burden is gone since the plea of guilty was entered to a lesser included crime?
A Yes.
Q But you understood, did you not, that if we had gone to trial that it is the Prosecutor's Office job to meet that burden of proof that it had before you could be convicted?
A Yes, sir."